635 So.2d 36 (1994)
Richard ALLERTON, Appellant,
v.
STATE of Florida DEPARTMENT OF INSURANCE, as Receiver of Guarantee Security Life Insurance Company, Appellee.
No. 93-979.
District Court of Appeal of Florida, First District.
January 14, 1994.
*37 Robert J. Winicki and David M. Wells of Mahoney, Adams & Criser, P.A., Jacksonville. Of counsel: James B. Weidner, Richard A. Cirillo, and Nancy A. Brown of Rogers & Wells; and Charles A. Stillman and Andrew D. Kaizer of Stillman, Friedman & Shaw, P.C., New York City, for appellant.
Stephen D. Busey and Leslie A. Wickes of Smith, Hulsey & Busey, Jacksonville, for appellee.
ALLEN, Judge.
Richard Allerton challenges a non-final order denying a motion to dismiss the complaint against him based on a lack of personal jurisdiction. We have jurisdiction, Fla. R.App.P. 9.130(a)(3)(C)(i), and affirm. In doing so, we conclude that the facts as alleged in the complaint preclude Allerton's reliance upon the "corporate shield doctrine" and indicate that he has submitted himself to the jurisdiction of the courts of this state under Florida's long-arm statute, section 48.193(1), Florida Statutes (1991).
In August of 1991, the Department of Insurance (the department) was appointed receiver for the insolvent Guaranty Security Life Insurance Company (GSL). In June of 1992, the department filed suit in Duval County, Florida on GSL's behalf against numerous parties, including Allerton, who was GSL's investment advisor, and Allerton's employer, Merrill Lynch. Allerton was at all relevant times a resident of Massachusetts or New York.
The complaint alleged four causes of action against Allerton and Merrill Lynch: 1) common law fraud, 2) breach of fiduciary duty, 3) aiding and abetting in a breach of fiduciary duty, and 4) conspiracy to commit fraud. These causes of action were based on the following alleged facts. GSL was a small, Jacksonville-based life insurance company in January 1984 when 100% of its stock was acquired by Transmark, a Kentucky corporation owned and directed in part by Mark Sanford, a Florida resident. After the acquisition, *38 GSL began offering high-yield single-premium and flexible-premium annuities and single-premium whole life insurance policies. In order to meet its high-yield commitments, GSL invested increasing amounts of its assets in high-risk "junk bonds." Florida law requires that insurance companies with such investments book a "mandatory securities value reserve" of 20% of the value of the bonds.
In late 1984, GSL's investment in such bonds had become so great that booking the required mandatory securities value reserve would have made the company appear insolvent. Sanford and Allerton thereupon allegedly instituted a "phantom year-end sale" scheme. That is, at the end of the years 1984-1986 and 1988, GSL appeared to sell hundreds of millions of dollars worth of junk bonds to Merrill Lynch and to purchase government securities exempt from mandatory securities value reserve requirements. However, GSL was, in reality, only "parking" its junk bond holdings with Merrill Lynch, and would repurchase them a few days into the succeeding year.
The "sale" and "repurchase" prices for the bonds were completely unrelated to the prevailing market rates, and were usually identical. However, Sanford proposed to Allerton that GSL repurchase some of the bonds at a price 1/8 of a point higher than the sale price. The difference was to serve both as Merrill Lynch's fee, and to dispel any suspicion which identical sale/repurchase prices might occasion. Allerton allegedly agreed to implement the 1/8-point idea. In 1986, also in furtherance of this scheme, Allerton allegedly manually altered Merrill Lynch's written confirmation of that year's transaction to show that the purchase of government securities occurred at the end of 1985 rather than the actual date in early 1986.
This "phantom year-end scheme" formed the basis for the counts alleging fraud, conspiracy to commit fraud, and breach of fiduciary duty. The department alleged that Allerton and Merrill Lynch knew or should have known that Merrill Lynch's confirmations and written statements concerning the transactions were false or made with reckless disregard for their truth. Allerton's actions were alleged to have damaged GSL by making it possible to conceal its adverse financial condition long after such condition should have been apparent, enabling GSL's directors to "loot" the company's assets by, among other things, forming phony consulting and advisory companies (consisting of GSL directors), and paying them exorbitant fees.
The complaint also alleged that GSL habitually purchased securities through Allerton and Merrill Lynch which had both debt (bond) and equity (common stock or stock warrants) components. The department alleged that GSL's directors had a practice, termed "equity stripping," of diverting the equity components into their personal portfolios. In September 1985, GSL purchased $15,000,000 worth of certain high-yield bonds. Sanford took for his own account common stock warrants associated with the purchase. In 1988, Sanford sold 100,000 of the warrants to Allerton, who resold them in 1990 at a $400,000 personal profit. These facts formed the basis for the count alleging aiding and abetting a breach of fiduciary duty, by "substantially assisting, contributing to and furthering the accomplishment of the breaches of fiduciary duties" by Sanford and others.
Allerton moved to dismiss the complaint as to himself. He asserted that the complaint alleged no facts to support personal jurisdiction over him and that the exercise of personal jurisdiction over him would be "inconsistent" with Florida's long-arm statute and with the due process clauses of the Florida and United States Constitutions. The motion alleged that, because no facts could be pled indicating sufficient contacts with Florida to confer personal jurisdiction, the complaint should be dismissed as to him. The trial court denied the motion without elaboration.
Section 48.193(1), Florida Statutes (1991) provides, in pertinent part:
Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

*39 (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.
We first address Allerton's argument that he is insulated from operation of this statute by the corporate shield doctrine because he was acting in an agency capacity for his employer, Merrill Lynch. This doctrine was recently explicated in Doe v. Thompson, 620 So.2d 1004 (Fla. 1993). Doe, a Florida resident, was sexually assaulted while working as a clerk in a Florida convenience store owned by Southland Corp. Doe sought personal jurisdiction over Thompson, a Texas resident and Southland corporate officer, alleging negligence in failing to provide proper store security. The trial court found personal jurisdiction, but the appellate court reversed. In approving the result reached by the appellate court, the supreme court agreed that, under the corporate shield doctrine, acts of a corporate employee performed in a corporate capacity do not form the basis for jurisdiction over corporate employees in their individual capacities. Id. at 1006.
However, while the court approved the rationale behind the doctrine, i.e., that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer, the court specifically noted that "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." Id. at 1006, n. 1 (emphasis supplied). In support of this proposition, the court cited numerous decisions from other jurisdictions, including Duke v. Young, 496 So.2d 37 (Ala. 1986). In discussing the corporate shield doctrine, the Duke court distinguished between employees' acts of "untargeted negligence", and intentional tortious acts expressly aimed at the forum state. The court concluded that, in the latter case, a defendant may not rely upon the corporate shield doctrine. Id. at 40 (citing Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).
In Calder, a California plaintiff sued a Florida newspaper and two of its employees in California state court based on an article about the plaintiff. In affirming a California finding of personal jurisdiction over the employees, the court acknowledged that
[employees'] contacts with the [forum state] are not to be judged by their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum state must be assessed individually.
Calder, 465 U.S. at 790, 104 S.Ct. at 1487.
The Court noted that the nonresident employees' actions were not "untargeted negligence," but rather were "intentional and allegedly tortious acts" expressly aimed at the plaintiff in the forum state because the defendants knew their actions would have potentially devastating impacts on the California plaintiff and that the brunt of their actions would be felt in California. Id. at 789-90, 104 S.Ct. at 1486-87. The Court concluded that jurisdiction in California was therefore proper, because of the defendants' intentional conduct calculated to cause injury to a plaintiff in the forum state. Id. at 791, 104 S.Ct. at 1488.
Here, Allerton is not alleged to have committed acts of "untargeted negligence," but rather to have committed the intentional torts of fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty, all aimed at GLS, a Florida insurance company. Under the rationale expressed in Doe, Duke, and Calder, we conclude that the corporate shield doctrine is inapplicable to this case.
We now address Allerton's assertion that the trial court failed to properly resolve the two-step inquiry for determining the propriety of exercising personal jurisdiction over a nonresident defendant. See Doe, 620 So.2d at 1005 (citing Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989)). The first step of that inquiry is to determine whether the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of section 48.193(1). Although the trial court herein did not specify under which portion of the statute it found jurisdiction to lie, jurisdiction could properly be found pursuant to section 48.193(1)(b), i.e., the commission of a tortious act within this state. See International *40 Harvester Co. v. Mann, 460 So.2d 580, 581 (Fla. 1st DCA 1984) ("It is well-established that the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of injury be within Florida.").
Allerton strongly maintained at the oral argument of this case that International Harvester is no longer good law, arguing that Doe expressly overruled its holding that injury in Florida alone is sufficient to confer jurisdiction under section 48.193(1)(b). We acknowledge that the supreme court exercised jurisdiction in Doe based on conflict with International Harvester. Doe, 620 So.2d at 1005. However, it disapproved International Harvester only "to the extent that [it is] in conflict with this opinion." Id. at 1006 (emphasis supplied).
In interpreting this proviso, it is important to note that the corporate employees in International Harvester were alleged to have committed the intentional tort of breach of fiduciary duty, while the conduct of the corporate employee in Doe was alleged to have been merely negligent. Further, the Doe court specifically indicated an exception to its holding for a "corporate officer committing fraud or other intentional misconduct." Based on this factual distinction, and the specific exception based thereon drawn in Doe, we construe Doe as disapproving International Harvester only to the extent that International Harvester might be seen to sanction the "injury only" rule with respect to merely negligent conduct by a nonresident corporate officer. We do not believe that the supreme court intended in Doe to deprive a Florida plaintiff, injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him, of the right to obtain personal jurisdiction over that employee in a Florida court. We decline to so hold, and we conclude that jurisdiction was properly exercised under section 48.193(1)(b) in this case.
The second step of the inquiry for determining the propriety of exercising personal jurisdiction over a nonresident defendant is to determine whether the exercise of Florida's long-arm jurisdiction constitutes a violation of due process. The specific inquiry, as applied to this case, is whether Allerton "should reasonably have anticipated being haled into court" in Florida. Venetian Salami Co., 554 So.2d at 500. The United States Supreme Court has rejected any "talismanic jurisdictional formulas" in making this determination, saying only that "the facts of each case must always be weighed" in determining whether personal jurisdiction would comport with "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985). The Court did state that "the quality and nature of an interstate transaction may sometimes be so random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction." Burger King Corp., 471 U.S. at 486, 105 S.Ct. at 2189.
A return to Calder is helpful on this issue. In that case, the Court held that intentional and allegedly tortious actions expressly aimed at the forum state, along with knowledge that the out-of-state actions would have potentially devastating impact in the forum state and that the brunt of the actions would be felt in that state, allow the conclusion that the nonresident "must have reasonably anticipated being haled into court there" regarding those actions. Calder, 465 U.S. at 789-90, 104 S.Ct. at 1484. The Court found jurisdiction constitutionally proper because of intentional conduct in the defendant's state of residence calculated to cause injury in the forum state. Id. at 791, 104 S.Ct. at 1488.
As previously discussed, Allerton is alleged to have committed numerous intentional torts over the course of several years aimed at a Florida resident, GLS. The quality and nature of his actions were not so "random, fortuitous or attenuated" that Allerton could not reasonably anticipate being haled into court in Florida. We therefore conclude that the exercise of personal jurisdiction in this case comports with the requirements of due process.
The order of the trial court is affirmed.
ZEHMER, C.J., and SHIVERS, Senior Judge, concur.