**John M. BLACK, Jr., individually, John Black, III, individually, and Black Fox Investments, a California general partnership, Plaintiffs,**

v.

**Thomas J. BRYANT, individually Bryant & Company, CPA's, P.A., A Florida corporation, Walt Walters, individually, Alan Arterbury, individually, and Malcolm Barnebey, individually, Defendants.**

**No. 95–830–CIV–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 16, 1995.

Michael Paul Sampson, Holland & Knight, Lakeland, FL, for plaintiffs.

Jonathan Stidham, Wofford H. Stidham, Lane, Trohn, Clarke, Bertrand, Vreeland & Jacobsen, P.A., Bartow, FL, for defendants.

## ORDER OF REFERRAL ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendant Malcolm Barnebey's Motion to Dismiss pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, for want of personal jurisdiction, filed with supporting affidavit on August 7, 1995 (Docket No. 11). Plaintiffs filed both a Response to Defendant's Motion to Dismiss (Docket No. 16) and an Affidavit in support of the Response (Docket No. 17) on September 5, 1995.

## I. BACKGROUND

The complaint in this cause of action was filed on June 1, 1995, by Plaintiffs John M. Black, Jr., John Black III, and Black Fox Investments, a California general partnership. The complaint contains nine (9) counts, however, Defendant Barnebey has been named only in the following counts: Count V (fraud against Barnebey), Count VI (conspiracy to commit fraud), Count VII (conversion against all defendants), and Count VIII (civil theft against all defendants).

For purposes of this Order and determination of the jurisdictional issue, the Court herein summarizes the allegations set forth within the Plaintiffs' Verified Complaint (Docket No. 1) and, to the extent they are uncontroverted by the Defendant's Affidavit, must accept them as true. *Madara v. Hall,* 916 F.2d 1510 (11th Cir.1990). Plaintiffs' allegations that are directly related to or involve Defendant Malcolm Barnebey are set forth with specificity. Additionally, the Court includes a list of the parties and related entities as they have been alleged and identified in Plaintiffs' complaint, for reference and understanding.

The following is a summary of the parties and related entities involved in this cause:

1.) John M. Black, Jr. ("Black") is a resident of California and, at all material times, an officer, director, and shareholder of Lighthouse Reef Resort Limited ("LRRL").

2.) LRRL is a Belizean limited liability corporation which runs a resort in Belize.

3.) John M. Black III ("J. Black III") is a resident of California.

4.) Black Fox Investments, Inc. ("Black Fox") is a general partnership organized under the laws of the state of California.

5.) Thomas J. Bryant ("Bryant") is a resident of Polk County, Florida and is licensed as a certified public accountant pursuant to Florida law. Bryant is president of Bryant & Company, CPA's, P.A. ("Bryant & Co.") and engaged in the practice of public accounting in Florida.

6.) Bryant & Co. is a corporation organized under the laws of the state of Florida and engaged in the practice of public accounting in Florida. At all material times, Bryant and Bryant & Co. were doing business in the state of Florida.

7.) Walt Walters ("Walters") is a resident of Polk County, Florida. At all material times, Walters was doing business in the state of Florida.

8.) Alan Arterbury ("Arterbury") is a resident of Texas. At all material times hereto, Arterbury was an officer, director, and shareholder of LRRL.

9.) Projects Caribbe, Ltd. ("Projects Caribbe"), is a Bahamian corporation that Walters formed, and in part owns, which received and maintains an ownership interest in LRRL.

10.) Blue Lagoon, Inc. ("Blue Lagoon"), is a Texas corporation that Arterbury formed, and in part owns, which received and maintains an ownership interest in LRRL. Blue Lagoon is allegedly represented as a scuba diving resort operated by Arterbury.

11.) Northern Cay Development Corporation, Inc. ("Northern Cay") is a corporation organized under the laws of Florida and licensed to do business in Florida. At all material times hereto, Northern Cay was to be LRRL's United States affiliate.

12.) Northern Two Cayes Co. Ltd. ("Northern Two Cayes") was formed by Black on March 26, 1978, for the purpose of owning and developing resorts in Belize, Central America.

### General Allegations

The allegations set forth in Plaintiffs' complaint begin when Northern Two Cayes agreed with LRRL to purchase land in Belize for the purpose of developing and operating a resort thereon. Upon agreement, Black was designated to the Board of Directors for LRRL and invested $50,000.00, (U.S.) as seed capital in the project. On May 9, 1989, LRRL's Board held its organizational meeting in Texas. At that meeting, Black was elected President and shares of stock were issued to shareholders. LRRL's organizers had previously agreed that one share of stock in LRRL would be issued per $100.00, (U.S.) investment.

Subsequently, Blue Lagoon (Arterbury) and Walters agreed to invest certain amounts of money in LRRL. Plaintiffs later discovered that such investments were either never contributed or only portions of the agreed upon amounts were invested. On July 19, 1989, Walters was elected to LRRL's Board of Directors and later became general contractor for construction of three villas at the resort. Walters was also a client of Bryant & Co., whose accounting and financial services he and Bryant offered to Black and LRRL for the purpose of overseeing escrow funds related to construction at the resort. Bryant later established two escrow accounts under the direction of LRRL.

In March 1990, an injunction was obtained against LRRL on matters unrelated to these proceedings. As a result, LRRL was prevented from issuing equity and all future shareholder contributions were to be in the form of loans until the injunction could be lifted and the shares issued. At such time, those who advanced funds could exercise options to convert debt to equity.

In January of 1991, Black acted on LRRL's behalf and advised Bryant to incorporate Northern Cay in Florida for the purpose of receiving, depositing, and remitting funds paid to LRRL in the United States. In turn, Bryant opened a bank account in the name of Northern Cay in Lakeland, Florida. Bryant is also alleged to have applied to the Florida Department of State for registration of "Lighthouse Reef Resort" as Northern Cay's fictitious name. Plaintiffs allege that Bryant later falsely identified expenses in LRRL's books, and disbursed and transferred escrow funds without authorization. In February 1992, in Texas, Arterbury, Black, Bryant and Walters were elected to the Northern Cay Board of Directors.

Defendant Barnebey is not mentioned in Plaintiffs' complaint until allegations are made concerning the July 17, 1992, shareholders and board meetings held on behalf of LRRL. On this date, Defendant Barnebey is alleged to have been elected to the Board of Directors as an "independent director". Plaintiffs allege that Barnebey had a long time relationship with Arterbury's father, which Barnebey and Arterbury failed to disclose prior to the election. Plaintiffs' complaint does not indicate where the July 17, 1992, meetings were convened.

Barnebey was in attendance at the July 17, 1992, meeting, during which minutes from a previous board meeting were amended to reflect that Black was due an additional 350 shares and a motion to authorize an additional 10,000 shares carried. Later during the July 17, 1992, LRRL board meeting, Bryant presented a financial report to the directors and the board voted to postpone the issuance of shares in exchange for prior advances to LRRL. Additionally, Arterbury was elected President and Black was elected Secretary/Treasurer. On July 30, 1992, Barnebey was copied on a fax from Arterbury to Black concerning expenditures and bank transfers from accounts of LRRL and Northern Cay.

On September 25, 1992, Barnebey attended an LRRL Board of Directors meeting held in Houston, Texas. At that meeting, Arterbury, Walters, and Barnebey voted to issue Projects Caribbe 150 shares; Black and Lutz, another member of the board, opposed. After discussion, Arterbury, Walters, and Barnebey voted to issue Projects Caribbe an additional 100 shares and credit its stock subscription account with $6,000.00 (U.S.).

Also during that meeting, Arterbury presented an unsigned copy of a "Directors' Consent in Lieu of a Meeting", pursuant to which LRRL's board would authorize issuance of stock in exchange for commissions that LRRL owed Blue Lagoon. Arterbury, presenting the unsigned document, allegedly advised the Board that he had a signed document and requested that stock be issued. Plaintiffs allege that based on this representation, Barnebey and Walters, in turn, voted with Arterbury to issue the additional stock. Black moved, and all voted, to issue Blue Lagoon 465 shares to satisfy its claim for services and advances.

At that meeting, Walters notified the shareholders that he was offering for sale the shares held by Projects Caribbe. Black moved that 500 shares be issued to J. Black III for $50,000.00 (U.S.) to satisfy a portion of his option to purchase LRRL shares; the motion failed. Walters, Arterbury, and Barnebey voted against issuing Plaintiffs shares for their advances. Barnebey then left prior to adjournment of the meeting.

Plaintiffs allege that the rift between the shareholders was a conspiracy hatched by Arterbury and Walters to block the issuance of shares to Plaintiffs for advances they had made to LRRL. Plaintiffs maintain that they advanced money to LRRL, which LRRL did receive, in expectation that one share would be issued for each US $100 advanced. Moreover, Plaintiffs allege that Arterbury, Walters, and Barnebey unfairly exercised their powers as directors for the improper purpose of ensuring their faction's aggregate majority of shares held.

Also included in Plaintiffs' complaint are allegations that on October 22, 1992, Black warned Bryant, Arterbury, Barnebey, and Walters, that inability promptly to resolve the issues of converting shareholder debt to equity put proposed financing, which Black was pursuing on behalf of LRRL, at risk. Plaintiffs go on to allege that Bryant falsified LRRL books regarding payments owed to the Black Group for rentals at the resort. Plaintiffs further allege that Bryant diverted and blocked funds to and from LRRL that were necessary to repayment of loans obtained on LRRL's behalf.

On August 2, 1993, Barnebey was copied, as a board member of LRRL, on a letter from Arterbury to Black regarding repayment of a loan obtained from a California on LRRL's behalf. This letter was written on Lighthouse Reef Resort letterhead with a Houston, Texas office address. Arterbury represented that he had paid his pro rata share of the debt owing, as well as, Walter's fair share of the obligation. Plaintiffs allege that Arterbury paid Walters' portion of the debt in order to obtain the ability to convert the advances to equity and undermine Plaintiffs' controlling equity position.

Regarding this specific Defendant, Barnebey, it is finally alleged that on or about January 12, 1994, Barnebey resigned from LRRL's Board of Directors. Subsequent to Barnebey's resignation, and to the present date, Plaintiffs allege that Bryant misstated the amount owed by LRRL in the LRRL books; authorized and issued stock in Northern Cay without Board authorization; held LRRL funds without authorization; and denied Black access to Northern Cay and

LRRL financial records. Defendant Barnebey is not mentioned in Plaintiffs' complaint beyond the date he is alleged to have resigned as a Director of LRRL.

## II. STANDARD OF REVIEW

■ Initially, the burden of establishing jurisdiction over a non-resident Defendant lies with the Plaintiffs. *Morris v. SSE, Inc.,* 843 F.2d 489 (11th Cir.1988). In a diversity action, a plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the applicable state statute. It is not necessary to plead the supporting facts. Fla. R.Civ.P. 1.070(i); *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989).

■ In response, a defendant may defeat the assertion of jurisdiction by proving facts inconsistent with or contrary to the statutory basis. *Core Industries, Inc. v. Agostinelli,* 591 So.2d 207 (Fla. 4th DCA 1991). Only after a defendant raises a meritorious challenge to the jurisdiction of the court by the use of affidavits, documents or testimony, does the burden shift back to the plaintiff to prove jurisdiction through affidavits, testimony or documents. *Jet Charter Service, Inc. v. Koeck,* 907 F.2d 1110, 1111 (11th Cir.1990); *Sims v. Sutton,* 451 So.2d 931 (Fla. 3d DCA 1984). Upon shifting the burden back to the plaintiff, "the non-moving party may not rest merely upon allegations or denials in his pleadings but his response by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Weller,* 504 F.2d at 929. Where affidavits cannot be harmonized, the trial court must hold a limited evidentiary hearing to determine the jurisdiction issue. *Venetian Salami,* 554 So.2d at 503.

■ When a court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over a nonresident defendant. *Morris,* 843 F.2d at 492. A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. *Madara v. Hall,* 916 F.2d 1510 (11th Cir.1990). In ruling on the motion to dismiss, the Court must accept the facts al-leged in plaintiff's complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *Id.* Moreover, where the plaintiff's complaint and the defendant's affidavits conflict, the Court is required to view the complaint in the light most favorable to the Plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## III. DISCUSSION

### A. GOVERNING LAW

■ The determination of personal jurisdiction over a nonresident defendant requires the Court to engage in a two-part analysis. *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 855 (11th Cir.1990). In a federal diversity action such as this, a district court first considers the presence or absence of personal jurisdiction according to the law of the state in which that court is situated. *Pizzabiocche v. Vinelli,* 772 F.Supp. 1245 (M.D.Fla.1991). In this case, Plaintiffs assert that this Court has personal jurisdiction over Defendants pursuant to Florida Statutes, Section 48.193, Florida's Long–Arm Statute. Therefore, the Court first inspects Florida's Long–Arm Statute to consider the jurisdictional issue.

Upon finding a basis for the assertion of personal jurisdiction under the applicable state statute, the Court must consider the second prong of the jurisdictional test which is a Due Process analysis. This Due Process analysis is also a two-pronged inquiry requiring the Court to initially determine whether sufficient minimum contacts exist between the Defendant and the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. *Madara,* 916 F.2d 1510 (11th Cir.1990). Finally, the second prong under the Due Process analysis requires the Court to determine that the maintenance of a suit is reasonable and does not violate "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Only if both prongs of the overall jurisdictional test are satisfied, in this case Florida's Long–Arm Statute and the Due Process analysis, may the Court exercise personal

**1052**

jurisdiction over nonresident Defendant Barnebey. *Madara,* 916 F.2d at 1516.

## 1. LONG–ARM JURISDICTION

The Court now addresses whether a tort was committed in the State of Florida pursuant to Florida Statutes, Section 48.193(1)(b), as asserted by Plaintiffs in the Response to Motion to Dismiss (Docket No. 16). Section 48.193 provides in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(b) Committing a tortious act within this state.

Florida Statutes, Section 48.193 (1995).

Plaintiffs contend that Defendant Barnebey committed intentional tortious acts in Florida because he participated in a scheme which ultimately denied Plaintiffs their right to receive stock in LRRL, as well as, their alleged right to receive funds from LRRL's affiliate, Northern Cay, a Florida corporation. Plaintiffs submit in their complaint and affidavit that Defendant Barnebey was copied on various letters generated on LRRL letterhead, many of which originated in Florida. Additionally, Plaintiffs have submitted excerpts from the 1992 and 1993 general ledger for LRRL and 1992 general ledger for Northern Cay. Through this financial information, it appears that Northern Cay paid out approximately $1,080.30 to Defendant Barnebey marked as "BOD meeting expenses" and "consulting". Additionally, it appears that LRRL paid out $3,209.00 to Defendant Barnebey, also marked as "BOD meeting expenses" and "consulting." Thus, Plaintiffs argue that Defendant Barnebey's actions not only constitute an intentional tort within the meaning of Section 48.193(1)(b), but also evidence Defendant Barnebey's personal availment of the benefits and protections of the laws of the state of Florida.

Therefore, Plaintiffs conclude that Defendant Barnebey has subjected himself to personal jurisdiction within the state of Florida.

Defendant Barnebey argues that he is not subject to personal jurisdiction in Florida because his only connection with this case is that he was a director of LRRL, a Belizean corporation, from July, 1992 until January, 1994.[1] He argues that his activities during all times material to this dispute were strictly limited to his duties as a corporate director for LRRL. Specifically, Defendant's affidavit submits that he participated in board and stockholders meetings, all of which were held in either Belize or Texas. While he was copied on several letters which originated in Florida, there is no evidence that he ever generated or directed communication to any party or entity within the state of Florida. Thus, the Defendant argues that he is not subject to personal jurisdiction in Florida, as he was at all times acting as agent of the Belizean corporation.

In order for a non-resident corporate officer to be subject to *personal* jurisdiction in Florida, it must be established that the officer acted not only in his capacity as agent for the corporation, but that he acted individually, for his own benefit, and thereby caused harm in the forum state. *Doe v. Thompson,* 620 So.2d 1004, 1006 (Fla.1993). In the *Doe* case, the complaint alleged simple negligence on the part of the non-resident corporate director and did not allege that his actions were particularly targeted to cause harm in Florida. Thus, the Court concluded that the Defendant was protected by the corporate shield doctrine and that he could not be haled into court in Florida in his personal capacity. The *Doe* Court specifically noted, however, that in accordance with Florida Statutes, Section 48.193(1)(b), a non-resident corporate officer may be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in the forum state. *Id.* at 1006, n. 1.

In *Allerton v. State Department of Insurance,* 635 So.2d 36 (Fla. 1st DCA 1994),

1. As alleged by Plaintiffs, the facts surrounding this dispute originate sometime in early 1989 and culminate in the filing of Plaintiff's Complaint on June 1, 1995.

the Court applied the rationale behind the *Doe* decision to a situation where a non-resident corporate officer was alleged to have committed an intentional tortious act. The *Allerton* Court found that the defendant in that case was subject to personal jurisdiction in Florida. *Id.* at 40. The Court based its decision on one important factual aspect present in that case. In *Allerton,* a non-resident corporate officer participated in a scheme calculated specifically to defraud a Florida insurance company. The Court found that when a non-resident corporate officer engages in intentional conduct designed to cause injury to a plaintiff in the forum state, the corporate shield doctrine will not protect that defendant from exposure to personal jurisdiction in that state. *Id.* at 39.

In the instant case, Defendant Barnebey as a non-resident corporate officer, is alleged to have committed the intentional torts of fraud, conspiracy to commit fraud, conversion, and civil theft. Like in *Allerton,* the Plaintiffs in this case have sufficiently alleged intentionally tortious conduct on the part of Defendant Barnebey. However, upon review of the parties' memoranda and supporting documents it is unclear to this Court whether Defendant Barnebey's alleged intentional conduct was expressly aimed at the forum state and whether such conduct is alleged to have caused harm in the state of Florida. The Plaintiffs have alleged harm to themselves individually, but have not specifically alleged harm to the Florida corporation with which they are associated. As the Plaintiffs are residents of California, the actual location of harm alleged in the complaint is unclear.

Therefore, in order to determine whether Plaintiffs have satisfied the first prong of the overall jurisdictional test, an evidentiary hearing must be held for additional fact-finding. Specifically, evidence must be taken to determine whether the alleged intentional torts were specifically designed to cause harm to the Plaintiffs in the state of Florida. Based upon current allegations and information provided the Court, it appears that such a finding would bring Defendant Barnebey squarely within the confines of Florida's Long–Arm Statute and, thus, satisfy the initial prong of the jurisdictional test.

## 2. DUE PROCESS ANALYSIS

Upon the taking of evidence, if the requirements of the Florida Long–Arm Statute are satisfied, the Court then must determine whether the exercise of personal jurisdiction over Defendant Barnebey comports with due process under federal constitutional law. First, the Court must determine whether sufficient minimum contacts exist between Defendant Barnebey and the state of Florida.

In his motion to dismiss, Defendant Barnebey argues that he did not have sufficient contact with the state of Florida because he was a director of LRRL which is a Belizean corporation. He further argues that he never attended any meetings as a director of LRRL within this state. Rather, Defendant Barnebey submits that the only meetings he attended were held in Belize and Texas.

In contrast, Plaintiffs rely on their contention that Defendant Barnebey falls within the ambit of Florida's Long Arm Statute to additionally satisfy the minimum contacts prong of the federal due process analysis. The Court again notes that Plaintiffs' factual assertions discussed above lack sufficient clarity. Accordingly, this issue also requires additional fact finding to determine the extent or degree of Barnebey's contacts with the state of Florida. Therefore, the Court refers this matter to be resolved together with the long-arm jurisdiction issue in the evidentiary hearing mandated above.

Upon a determination that sufficient minimum contacts exist between Barnebey and the forum state, the second prong of the due process analysis requires the Court to determine whether the notions of fair play and substantial justice comport with the exercise of personal jurisdiction over this Defendant. To determine whether the assertion of personal jurisdiction will comport with fair play and substantial justice, the Defendant's contacts with the forum state must be considered in light of several factors. These factors include the following: burden on the defendant in defending the lawsuit in the

**1054**

forum state, the forum state's interest in adjudicating the dispute, plaintiff's interest in obtaining convenient and effective relief, interstate judicial system's interest in obtaining most efficient resolution of the controversy, and shared interests of states in furthering fundamental substantive social policies. *See Madara v. Hall,* 916 F.2d 1510, 1517 (11th Cir.1990). As discussed above, it is presently unclear whether Defendant Barnebey has purposefully established minimum contacts with the state of Florida such that he should "reasonably anticipate being haled into court" in this state. *Shaffer v. Heitner,* 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). Thus, this Court postpones the second prong of the due process analysis pendent upon the factual findings made at the evidentiary hearing.

At this point, the Court recognizes that Plaintiffs have attempted to set forth substantial allegations in their complaint. However, as to this specific Defendant, the allegations currently submitted are insufficient to make a full and fair determination of personal jurisdiction. Therefore, in the interests of justice the Court requires an evidentiary hearing to consider the issues raised in this order. Accordingly it is

**ORDERED** that Defendant's Motion to Dismiss for want of personal jurisdiction be **Referred** to the assigned magistrate judge for an evidentiary hearing, in accordance with the directions of this order, and issuance of a report and recommendation.

**DONE AND ORDERED.**