ON MOTION FOR REHEARING

KLEIN, Judge.
We withdraw our opinion filed on July 2, 1997 and substitute the following opinion.
In 1986 the appellee mother obtained a Florida judgment establishing the paternity of her child and requiring the father to pay child support. The father, who now resides in Ohio, filed for modification in Florida to reduce his child support, and the mother filed a counterclaim to increase it. In addition, the mother filed a third-party complaint against the appellants, alleging that the appellants had conspired with the father in Ohio to commit fraudulent transfers of assets which will prevent appellee from collecting child support.
Appellants, who reside in Ohio and were served there, moved to dismiss based on lack of personal jurisdiction. The trial court denied the motion, and in our initial opinion we affirmed because we were under the impression that there had been an evidentiary hearing but that there was no transcript reflecting what transpired at that hearing.
We have now been advised on rehearing that there was no evidence submitted at the hearing and that the court decided the case based on the affidavits and memoranda of law. Accordingly, we can determine the jurisdictional issue because it was a purely legal decision. Royal Oak Landing Homeowner’s Ass’n., Inc. v. Pelletier, 620 So.2d 786 (Fla. 4th DCA 1993).
The relief the mother seeks against appellants is to set aside the alleged fraudulent transfers of property pursuant to the “Uniform Fraudulent Transfer Act,” Chapter 726, Florida Statutes (1995). She alleged that the appellants were subject to the jurisdiction of the Florida court pursuant to Florida’s long-arm statute, section 48.193(l)(b), Florida Statutes (1995), because they committed a “tortious act within this state.” She argues, notwithstanding that the alleged fraudulent transfers of property occurred in Ohio, that *687 she was injured in Florida by that conduct, because the transfer will reduce the father’s ability to pay child support.
Appellants argue that the conduct which they are alleged to have engaged in is not a tort, and that they have thus not committed a “tortious act,” so as to subject them to jurisdiction under section 48.193(l)(b), Florida Statutes. Alternatively, they argue that the alleged tortious acts were not committed “within this state,” or that there were insufficient minimum contacts to comply with due process.
We need not decide whether the allegations against the appellants constitute a tort, a question of first impression in Florida[1], because we have concluded that even if they did, they would still not constitute a “tortious act within this state.”
The case on which the mother relies which is closest is Allerton v. State Department of Insurance, 635 So.2d 36 (Fla. 1st DCA 1994), in which the defendant was an investment adviser who was arguing that he had not committed a tort in Florida. Although the investment adviser was not a- resident of Florida and did not engage in any activity in Florida, he was alleged to have committed fraud and breach of fiduciary duty on a Florida insurance company. In holding that Florida did have personal jurisdiction over the defendant, the first district concluded that section 48.193(l)(b) does not require physical entry, but only that the place of injury be within Florida.
The Allerton court relied on International Harvester Co. v. Mann, 460 So.2d 580 (Fla. 1st DCA 1984) which also held that long-arm jurisdiction based on commission of a tort only requires that the injury be within Florida, citing Lee B. Stern & Co., Ltd. v. Green, 398 So.2d 918 (Fla. 3d DCA 1981); Bangor Punta Operations, Inc. v. Universal Marine Co., 543 F.2d 1107 (Fla. 5th Cir.1976); Rebozo v. Washington Post Co., 515 F.2d 1208 (Fla. 5th Cir.1975).
We agree with appellants that even if they committed a tort in Ohio, there has been no injury in Florida under Allerton or that line of cases sufficient to subject the appellants to jurisdiction under section 48.193(l)(b). We are not persuaded by plaintiffs argument that the fraudulent transfers have injured her by causing the Florida court to award a lower amount of child support than if there had been no fraudulent transfers. This possible injury to plaintiff has not yet occurred and may not occur.
Irrespective of whether the Florida court has jurisdiction over the appellants, the mother can still prove that the father made fraudulent transfers so as to reduce his ability to pay child support. This evidence would provide the trial court with a reason to depart from the child support guidelines under Section 61.30(l)(a), Florida Statutes (1995), if the court finds that the guideline amount would be “unjust or inappropriate.”
Our conclusion that there has, as yet, been no injury in Florida, and that the appellants are thus not amenable to service of process for having committed a “tortious act within this state,” makes it unnecessary for us to decide whether the trial court’s order violates due process. The order denying the motion to dismiss is reversed.
GROSS, J., and PARIENTE, BARBARA J., Associate Judge, concur.

. The majority of courts which have considered the issue of whether actions to set aside fraudulent conveyances under the Uniform Fraudulent Transfer Act are tort actions have concluded that they are not. These cases are collected in Federal Deposit Insurance Corp. v. S. Drawer & Co., 829 F.Supp. 453 (1993). The minority view, that these can be tort actions, is set forth in Summers v. Hagen, 852 P.2d 1165 (Alaska 1993), and cases cited therein.