# Third District Court of Appeal
## State of Florida

Opinion filed March 6, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1580
Lower Tribunal No. 20-19570
_____


**Ornella Pianezza and Andrea Artioli,**
Appellants,

vs.

**MIA Collection Services LLC,**
Appellee.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Nelson Mullins, and Jonathan Etra, and Ryan K. Todd; Nelson Mullins, and Christina Lehm (Fort Lauderdale), for appellants.

Mitrani, Rynor, Adamsky & Toland, P.A., and Isaac J. Mitrani, Pamela A. Chamberlin, and Daniel S. Bitran, for appellee.


Before LOGUE, C.J., and SCALES and GORDO, JJ.

LOGUE, C.J.

Ornella Pianezza and Andrea Artioli appeal the trial court's denial of their motion to dismiss for lack of personal jurisdiction. We have jurisdiction.[1] Because the complaint sufficiently alleged that Pianezza and Artioli engaged in tortious conduct within Florida, we conclude that both parties are subject to jurisdiction in Florida.

## BACKGROUND

The underlying lawsuit was brought by MIA Collection Services LLC against Hyba General Trading LLC, Mattia Asti Brun, Pianezza, and Artioli. Hyba is a limited liability company located in Dubai, United Arab Emirates. Pianezza and Artioli work for Hyba and are European citizens who reside in Europe and Dubai.

MIA Collection alleged that its predecessor in interest[2] paid Hyba for genuine brand-named handbags, citing four separate invoices, but received counterfeit handbags instead. It brought claims against Pianezza and Artioli for fraud in the inducement, negligent misrepresentation, breach of express warranty, and conspiracy.

---

[1] Fla. R. App. P. 9.130(a)(3)(C)(i) ("Appeals to the district courts of appeal of non-final orders are limited to those that . . . determine . . . the jurisdiction of the person.").

[2] MIA Collection and its predecessor in interest will hereinafter be referred to collectively as "MIA Collection."

The operative Second Amended Complaint alleged Artioli (1) was a principal of Hyba; (2) was aware of the sales; (3) specifically made misrepresentations about the authenticity of the handbags and from where they were sourced; (4) actively participated in the sales; and (5) knew or should have known that the representations he made, and authorized and directed his employees and agents to make, were false. The complaint further alleged Pianezza and Artioli "committed tortious acts in Florida by, among other things, sending and/or directing telephonic and electronic communications into Florida," which were the direct and proximate cause of injuries in Florida.

MIA Collection alleged Pianezza and Artioli falsely represented that Hyba had a relationship with Hermès, a high-end, luxury goods brand. It alleged Pianezza was copied on many emails containing such misrepresentations and later sent many such emails herself. MIA Collection also alleged Pianezza sent emails to its employee in Florida referencing the brand, specific models of handbags, and other details regarding the merchandise. MIA Collection contends Pianezza was copied on emails and did not correct misrepresentations, knew or should have known the misrepresentations made were false, and, with Artioli's approval, directed that such misrepresentations be made to MIA Collection. MIA Collection also

3

alleged Pianezza and Artioli met with its executive officer in Singapore in May 2019 and discussed the high-end, luxury handbags and expanding the parties' business.

Pianezza and Artioli filed a motion to dismiss for lack of personal jurisdiction and failure to state a cause of action. They argued MIA Collection's entire theory of personal jurisdiction was based on five total emails and text messages, which were sent only by Pianezza and only while acting as an employee of Hyba. Pianezza and Artioli argued the corporate shield doctrine precluded personal jurisdiction and further argued MIA Collection failed to sufficiently plead an intentional tort. Pianezza and Artioli contended the sworn evidence submitted with their motion to dismiss refuted MIA Collection's allegations and further argued that a handful of emails and text messages did not establish sufficient minimum contacts with the forum to satisfy constitutional due process.

In support of their motion to dismiss, Pianezza and Artioli submitted Artioli's declaration; Pianezza's declaration; Artioli's declaration as Corporate Representative of Hyba; Artioli's deposition; and Pianezza's deposition.

In his deposition, Artioli testified he was aware that Pianezza was working with MIA Collection on the sale of "Hermès bags" and "other

products." While he was circumspect regarding the extent of his knowledge, involvement, and authorization concerning the sales, Artioli did testify that "[Pianezza] . . . keeps me informed on the activities that she carries out on behalf of Hyba." Artioli also testified he became aware "at a certain point" in 2018, while the transaction between the two companies was ongoing, that MIA Collection was in Florida.

During the deposition, Artioli was instructed by his counsel not to answer when asked directly whether he (1) authorized Pianezza to misrepresent that Hyba could sell genuine Hermès bags; (2) collaborated with Pianezza and Asti Brun to misrepresent to MIA Collection that Hyba could sell legitimate Hermès bags; (3) was aware that MIA Collection relied on the misrepresentations of Hyba, Artioli, and Pianezza that the bags were genuine; (4) conspired with Asti Brun to defraud MIA Collection; (5) monitored and approved of Pianezza's misrepresentations to Asti Brun and MIA Collection regarding the legitimacy of the Hermès bags; (6) knew and in fact advised Pianezza to misrepresent to MIA Collection that the Hermès bags were legitimate; and (6) instructed Pianezza to tell MIA Collection that he was acquiring the bags directly from Hermès, which he knew was false.

Pianezza testified at her own deposition that in April 2018 she was provided with a Florida address for MIA Collection. Pianezza testified Hyba

5

did not solicit business in Florida and was not initially aware that MIA Collection was in Florida. Pianezza denied directing phone calls, text messages or emails to anyone in Florida, but then admitted to communicating with an employee of MIA Collection, Joe Colon, via WhatsApp messages and calls. She also admitted exchanging emails with Colon. Pianezza further testified that Artioli "knew of" the relationship between Hyba and MIA Collection and of the sales taking place. On instruction of her counsel, Pianezza did not answer any questions regarding the genuineness of the Hermès bags at issue, what MIA Collection knew or understood about the genuineness of the bags, and what she knew and represented to them regarding same.

Pianezza also continued to challenge whether she knew MIA Collection was headquartered in Miami, Florida. She acknowledged receiving an address to send bills to in Miami, but argued this was inconclusive. She denied knowing whether Joe Colon was in Miami when they spoke. She did, subsequently, seemingly admit that she became aware the bags were shipped to Florida "when Joe Colon communicated the address to me."

Both Artioli and Pianezza also submitted declarations denying that they "directed a phone call, text message, or e-mail to anyone in the state of

6

Florida" on their own behalf. Artioli also submitted a declaration as corporate representative on behalf of Hyba, stating that Hyba (1) "did not breach any alleged agreement" with MIA Collection "by allegedly providing counterfeit products"; (2) "did not make fraudulent misrepresentations" to MIA Collection; (3) "did not make false statements, regarding the genuine nature of the handbags"; and (4) "did not breach any alleged warranties" to MIA Collection "by selling it handbags that were allegedly not authentic."

MIA Collection filed a written response in opposition to the motion to dismiss. They maintained there was personal jurisdiction over Pianezza and Artioli because "they committed intentional torts by both sending and directing communications into Florida, which caused injury in Florida[.]" MIA Collection further argued Pianezza's and Artioli's self-serving testimony, denials, and legal conclusions did "not even rise to [the] required level to shift the burden back to MIA [Collection] to demonstrate that personal jurisdiction over [Pianezza and Artioli was] proper." Nevertheless, in support of their response in opposition, MIA Collection submitted the declaration of its trial counsel, the declaration of its executive officer, the declaration of Joe Colon, and Artioli's deposition, including several exhibits from the deposition.

The trial court held a non-evidentiary hearing on Pianezza and Artioli's motion to dismiss on August 8, 2022. At the conclusion of the hearing, the

trial court ruled that the Second Amended Complaint was sufficiently pled, and that jurisdiction was "also fine." On August 20, 2022, the trial court issued its order denying Pianezza and Artioli's motion to dismiss. This appeal timely followed.

## ANALYSIS

A trial court's denial of a motion to dismiss for lack of personal jurisdiction is subject to de novo review. Wendt v. Horowitz, 822 So. 2d 1252, 1256 (Fla. 2002). The facts are to be derived "from the affidavits in support of the motion to dismiss, and the transcripts and records submitted in opposition to the motion to dismiss." Id. at 1254.

Pianezza and Artioli argue the trial court erred in exercising personal jurisdiction over them because MIA Collection's Second Amended Complaint failed to set forth sufficient facts to bring the action within the ambit of Florida's long-arm statute. Pianezza and Artioli further argue that, even if MIA Collection had sufficiently pled a jurisdictional basis under the long-arm statute, they put forth evidence refuting MIA Collection's allegations of an intentional tort and MIA Collection failed to rebut their evidentiary submissions with evidence of its own. Pianezza and Artioli argue they also lack the necessary minimum contacts with Florida.

Florida courts conduct a two-step inquiry to determine whether a court has personal jurisdiction over a nonresident defendant. See Belz Investco Ltd. P'ship v. Groupo Immobiliano Cababie, S.A., 721 So. 2d 787, 789 (Fla. 3d DCA 1998) (citing Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989)).

> First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
>
> The first prong—i.e., the statutory prong—of the Venetian Salami standard is governed by Florida's long-arm statute and bestows broad jurisdiction on Florida courts. A court can exercise personal jurisdiction, inter alia, whenever a foreign corporation commits a "tortious act" on Florida soil. The second prong—i.e., the constitutional prong—is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement. A court can exercise personal jurisdiction only if the foreign corporation maintains "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

Wendt, 822 So. 2d at 1257 (quoting Execu–Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000)).

9

## I. Long-Arm Statute

MIA Collection relies on the portion of Florida's long-arm statute that provides for personal jurisdiction over persons "[c]ommitting a tortious act within this state." § 48.193(1)(a)(2), Fla. Stat. Artioli and Pianezza contend, however, that they were acting solely in their capacity as employees on behalf of Hyba. As such, they argue the trial court lacked personal jurisdiction over them pursuant to the corporate shield doctrine.

In Kitroser v. Hurt, 85 So. 3d 1084, 1088 (Fla. 2012), the Florida Supreme Court explained that the corporate shield doctrine "provides that acts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." (emphasis omitted). The rationale behind the doctrine, the Florida Supreme Court explained, was that "it may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer." Id.

Kitroser recognized, however, that an exception exists limiting the doctrine's protection where a corporate officer commits fraud or other intentional misconduct outside of Florida. Id. at 1088 n.3 (citing Doe v.

Thompson, 620 So. 2d 1004, 1006 (Fla. 1993); Oesterle v. Farish, 887 So. 2d 412 (Fla. 4th DCA 2004)). Kitroser also holds that the corporate shield doctrine will not operate to bar personal jurisdiction in Florida over an individual defendant that commits a tortious act in Florida, regardless of whether it was on behalf of a corporate employer. 85 So. 3d at 1089-90.

Here, MIA Collection alleged a claim for fraudulent inducement against Artioli and Pianezza that would preclude application of the corporate shield doctrine. The threshold question raised, therefore, is whether the complaint sufficiently states a cause of action for this intentional tort. See LaFreniere v. Craig-Myers, 264 So. 3d 232, 239 (Fla. 1st DCA 2018). It does.

The operative Second Amended Complaint alleged that (1) Artioli directed his employees and agents to make misrepresentations about the authenticity of the handbags and from where they were sourced; (2) Artioli and Pianezza made these misrepresentations to MIA Collection; (3) they knew these representations were false; (4) they intended to induce MIA Collection to purchase the counterfeit bags based on these misrepresentations; and (5) MIA Collection purchased the handbags based on these misrepresentations. These allegations sufficiently set forth a cause of action for the intentional tort of fraudulent inducement. See Moriber v. Dreiling, 194 So. 3d 369, 373 (Fla. 3d DCA 2016) (setting forth elements for

11

fraudulent misrepresentation and fraudulent inducement); Thorpe v. Gelbwaks, 953 So. 2d 606, 609 (Fla. 5th DCA 2007) (explaining that when deciding a motion to dismiss for lack of personal jurisdiction, "[t]he trial court's focus should have been on whether the tort, as alleged, occurred in Florida, and not whether the [plaintiffs] proved that [the defendant] had actually committed a tort in Florida.").

Additionally, the Second Amended Complaint also alleged Artioli and Pianezza "committed tortious acts in Florida by, among other things, sending and/or directing telephonic and electronic communications into Florida, which caused injury in Florida." It was alleged Pianezza sent emails to MIA Collection's employee in Florida, Joe Colon, referencing the Hermès brand, specific models of the handbags, and other details regarding the merchandise. MIA Collection contends Pianezza was also copied on emails and did not correct misrepresentations in these emails, knew or should have known the misrepresentations made were false, and, with Artioli's approval, directed that such misrepresentations be made to MIA Collection.

These allegations are sufficient to allege that Artioli and Pianezza committed a tortious act within this state by making telephone calls and sending emails containing fraudulent misrepresentations into Florida. See Wendt, 822 So. 2d at 1260 ("'[C]ommitting a tortious act' in Florida under

section 48.193(1)(b) can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida . . . [but] the cause of action must arise from the communications.").

Artioli and Pianezza submitted affidavits and deposition testimony in support of their motion to dismiss for lack of personal jurisdiction; however, these were insufficient to shift the burden to MIA Collection to demonstrate why jurisdiction was proper. See, e.g., Acquadro v. Bergeron, 851 So. 2d 665, 671 (Fla. 2003) ("[P]etitioners contend that after they filed affidavits contesting personal jurisdiction, the burden should have shifted to [plaintiff] to demonstrate why jurisdiction was proper in this case. However, . . . petitioners' contention only has merit assuming that the affidavits were legally sufficient to shift the burden.").

Pianezza, for her part, does not deny exchanging telephone calls and emails with Joe Colon. See OSI Indus., Inc. v. Carter, 834 So. 2d 362, 368 (Fla. 5th DCA 2003) ("On the issue of whether the tort, as alleged, occurred in Florida, Carter's affidavits alleged that it did in the form of a telephone conversation. Lavin's affidavit did not deny the possibility that the telephone conversation occurred. Thus, the affidavits could be harmonized on the issue of whether the tort, as alleged, occurred in Florida. It was not necessary to harmonize the affidavits or conduct an evidentiary hearing on the issue of

13

whether the tortious statements were actually made. Accordingly, the trial court's analysis on the statutory basis for personal jurisdiction was correct.") (internal citation omitted). Nor does she deny being aware that MIA Collection was in Florida.

Pianezza did try to obfuscate these facts during her deposition by insisting that she did not know where Colon was located when they exchanged telephone calls and emails, and further insisted that simply because she was provided an address in Florida to send bills did not mean the company was in Florida. To the extent these allegations might be considered sufficient to shift the burden, MIA Collections sufficiently met its burden by providing the affidavit of Colon. In it, Colon attested that he received catalogues and invoices from Pianezza in Miami, Florida, he had telephone calls with Pianezza while he was in Miami, Florida, and the handbags were delivered to Miami, Florida.

Artioli also acknowledged in his deposition he was aware that MIA Collection was in Florida. He further testified he was aware that Pianezza was working with MIA Collection on the sale of "Herm[è]s bags" and "other products." While he was circumspect regarding the extent of his knowledge, involvement, and authorization concerning the sale of the bags, Artioli did testify that Pianezza kept him "informed on the activities that she carrie[d]

14

out on behalf of Hyba." Artioli never expressly denies the complaint's allegations that he specifically made misrepresentations about the authenticity of the handbags and from where they were sourced, or that he knew or should have known the representations he made and authorized and directed his employees and agents to make were false. Indeed, neither Artioli nor Pianezza responded to questions during their depositions regarding the allegations of tortious conduct contained in the complaint.

Although both Artioli and Pianezza denied in their declarations that they "directed a phone call, text message, or e-mail to anyone in the state of Florida," they qualified these statements by stating they never did so on their own behalf. This qualification fails to negate MIA Collection's allegation that they "committed tortious acts in Florida by . . . sending and/or directing telephonic and electronic communications into Florida," as it leaves open the inference that they did direct phone calls, text messages, and/or emails into Florida in their capacity as employees of Hyba, which is in line with their corporate shield defense. However, this ignores the fact that "a corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction," regardless of whether the acts were committed in their corporate capacity. XL Vision, LLC. v. Holloway, 856 So. 2d 1063, 1067 (Fla.

15

5th DCA 2003) (citing <u>Doe</u>, 620 So. 2d at 1006 n.1). <u>See also</u> <u>Kitroser</u>, 85 So. 3d at 1088-90.

And Artioli's declaration as corporate representative on behalf of Hyba contained nothing more than legal conclusions, which MIA Collection was not required to refute. <u>See</u> <u>Edelstein v. Marlene D'Arcy, Inc.</u>, 961 So. 2d 368, 371 (Fla. 4th DCA 2007) ("[T]he defendant's affidavits submitted in support of a motion to dismiss based on lack of personal jurisdiction 'must contain something more than the assertion of legal conclusions.'" (quoting <u>Radcliffe v. Gyves</u>, 902 So. 2d 968, 971 (Fla. 4th DCA 2005))); <u>Thorpe</u>, 953 So. 2d at 610 ("[Defendants'] denials of any wrongdoing, as set forth in paragraph four of his affidavit, constitute mere legal conclusions, not assertions of fact. Therefore, the [plaintiffs] were not required to file an affidavit refuting these conclusionary statements." (citing <u>Acquadro</u>, 851 So. 2d at 672–73)).

Accordingly, MIA Collection's complaint sufficiently alleged Artioli and Pianezza committed a tortious act within this state by directing telephonic and electronic communications into Florida in which they allegedly fraudulently misrepresented the authenticity of Hermès handbags sold to MIA Collection. Artioli and Pianezza did not deny the possibility that such communications took place. Thus, the first jurisdictional test under <u>Venetian Salami</u> is met.

16

## II. Constitutional Due Process

As to minimum contacts, the trial court properly concluded that minimum contacts were shown. The test is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

In Calder v. Jones, 465 U.S. 783 (1984), a California plaintiff sued a Florida newspaper and two of its employees in California state court based on an article about the plaintiff. In affirming a California court's finding of personal jurisdiction over the employees, the Supreme Court noted that the nonresident employees' actions were not "untargeted negligence," but rather were "intentional[ ] and allegedly tortious[ ] actions" expressly aimed at the plaintiff in the forum state. Id. at 789. The defendants knew their actions would have potentially devastating impacts on the California plaintiff and that the brunt of their actions would be felt in California. Id. at 789-90. The Court concluded that jurisdiction in California was therefore proper because the nonresident employees "must [have] reasonably anticipate[d] being haled into court there" as a result of those actions. Id. at 790 (citations omitted).

Here, the intentional tort of fraudulent inducement was aimed at MIA Collection, a Florida resident. Artioli and Pianezza both acknowledged they

knew MIA Collection was in Florida. While they both denied initially knowing the company was in Florida and denied seeking out business in Florida, the fact is they became aware of the company's location in Florida and chose to continue with the business transaction rather than discontinuing the business relationship. Indeed, Artioli expressed a desire to continue building the business relationship between the two companies, testifying: "We wanted to acquire new customers. [MIA Collection] was new so we were happy to acquire an important company like [MIA Collection]. We were happy [they] wanted to deal with us."

As such, Artioli and Pianezza must have "reasonably anticipated being haled into court" in Florida based on the business transaction. See Allerton v. State Dep't of Ins., 635 So. 2d 36, 40 (Fla. 1st DCA 1994) ("Allerton is alleged to have committed numerous intentional torts over the course of several years aimed at a Florida resident, GLS. The quality and nature of his actions were not so 'random, fortuitous or attenuated' that Allerton could not reasonably anticipate being haled into court in Florida. We therefore conclude that the exercise of personal jurisdiction in this case comports with the requirements of due process."). For this reason, again, the corporate shield doctrine also does not apply as the corporate officers themselves are alleged to have committed intentional torts expressly aimed at Florida. Id.

18

## **CONCLUSION**

Based on the foregoing, we affirm the trial court's denial of Artioli and Pianezza's motion to dismiss for lack of personal jurisdiction. MIA Collection's complaint sufficiently alleged Artioli and Pianezza committed a tortious act within this state by directing telephonic and electronic communications into Florida in which they allegedly fraudulently misrepresented the authenticity of Hermès handbags sold to MIA Collection, and Artioli and Pianezza did not sufficiently deny the possibility that such communications took place.

Furthermore, sufficient minimum contacts existed because Artioli and Pianezza knew MIA Collection was in Florida and, therefore, they knew their alleged misrepresentations would impact a Florida resident and would cause injuries in Florida. Such intentional and allegedly tortious actions expressly aimed at the forum state, along with knowledge that the out-of-state actions would have potentially devastating impact in the forum state and that the brunt of the actions would be felt in that state, allow the conclusion that the nonresident "must [have] reasonably anticipate[d] being haled into court there" regarding those actions. Calder, 465 U.S. at 790 (citations omitted).

Affirmed.