869 So.2d 592 (2004)
STATE of Florida, OFFICE OF the ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, Appellant,
v.
WYNDHAM INTERNATIONAL, INC., et al., Appellees.
No. 1D02-4341.
District Court of Appeal of Florida, First District.
February 26, 2004.
*594 Charlie Crist, Attorney General; George S. Lemieux, Deputy Attorney General; Tina Furlow, Assistant Attorney General; John Mark Kraus, Assistant Attorney General, Tallahassee, for Appellant.
Katherine A. Bacal, Esq. of Baker & McKenzie, San Diego; Jerome W. Hoffman, Esq. and Susan L. Kelsey, Esq. of Holland & Knight LLP, Tallahassee, for Appellees.

ON MOTION FOR REHEARING, CLARIFICATION, REHEARING EN BANC, AND CERTIFICATION.
LEWIS, J.
We deny the motion for rehearing, rehearing en banc, and certification filed by appellees McCleave and Wagoner. We grant the motion for clarification, withdraw our opinion filed on December 31, 2003, and substitute the following opinion in its place.
The Office of the Attorney General of the State of Florida sued two corporations, Wyndham International, Inc. ("Wyndham"), and Patriot American Hospitality, Inc. ("Patriot"), and four Wyndham employees, Theodore Teng, William McCleave, Laurie Leh (formerly Holm), and Jeff Wagoner ("individual appellees") for alleged violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), sections 501.201-.213, Florida Statutes (2001). The individual appellees moved to dismiss the suit for lack of personal jurisdiction, among other grounds, raising the corporate shield doctrine and asserting a lack of sufficient contacts with Florida to allow for the exercise of personal jurisdiction over them. The trial court determined that it lacked personal jurisdiction over the individual appellees and entered an order granting their motion to dismiss with prejudice. The trial court dismissed Teng on the additional ground that the amended complaint failed to state a cause of action against him.[1] Concluding that appellees McCleave and Wagoner are subject to jurisdiction in Florida, we reverse the trial court's order as to these appellees and remand for further proceedings. We otherwise affirm the order as to appellees Teng and Leh.
The amended complaint alleged that Wyndham and Patriot, a subsidiary of Wyndham, owned and operated numerous hotels in Florida and that the corporations and the individual appellees had violated FDUTPA. According to the Attorney General, the basis of this allegation was an energy surcharge of $2.50 to $3.00 per night, in addition to the regular room rate, which Wyndham instituted at its hotels and properties, including those in Florida, beginning in March 2001 and continuing *595 through December 2001. The amended complaint further alleged that the surcharges had not been disclosed to consumers when they made their reservations or entered into contracts for certain room rates. The surcharge was not disclosed to guests until they checked in or, in some cases, until they checked out and the charges appeared on their final bills. While the surcharge was removed for some guests who protested the fee, in other instances, the surcharge was not removed from guests' bills. According to the amended complaint, one of Wyndham's Florida properties entered into a contract with the Florida Department of State Records Management Services to provide rooms for a conference to be held by the Department of State. This contract did not disclose that the rooms contracted for would be charged an additional $2.75 energy surcharge. The guests' bills, which included the contracted rate and the undisclosed surcharge, were then submitted to various state government agencies for payment.
At all times pertinent to the lawsuit, Teng was the chief operating officer and executive vice-president of Wyndham, Wagoner was the senior vice-president of hotel operations at Wyndham, McCleave was the vice-president of engineering at Wyndham, and Leh was the regional director of operations for the eastern region at Summerfield Suites by Wyndham. With respect to each of the individual appellees, the amended complaint alleged that each had "directly participated in the deceptive acts and practices alleged ... and/or directed or controlled the deceptive or unfair practices and policies ... or had authority to control them, and had actual or constructive knowledge of the acts and practices complained of...." It more specifically alleged that Wagoner and McCleave directed Wyndham's hotels to begin charging the energy surcharge of $2.50 per room per night, which was over and above the cost represented to consumers at the time they made their reservations. Leh was also alleged to have directed all Summerfield properties under her control to apply the energy surcharge immediately. The amended complaint was absent any specific allegations as to what, if any, wrongful acts Teng committed.
In support of their motion to dismiss on jurisdictional grounds, the individual appellees each submitted affidavits stating that their actions relevant to this lawsuit were undertaken in their capacity as corporate employees, that none of the individual appellees ever charged or collected any energy surcharges, that none of them were residents of Florida, and that they had no contacts with Florida whatsoever outside of the course and scope of their employment with Wyndham. Leh also averred that she did not have the authority to develop or implement a policy that required hotels within her region to begin charging energy surcharges.[2] In response, the Attorney General filed the affidavits of two of its employees with the trial court. The employees attached as exhibits to their affidavits copies of emails sent to Wyndham's hotels in Florida by appellees McCleave, Leh, and Wagoner regarding the development and imposition of the surcharge.
The emails showed that the energy surcharge had first been initiated by Wagoner in an attempt to combat the energy crisis in California. Wagoner then sent an email to McCleave, asking him to devise plans to "roll out the energy surcharge in several more cities" and requesting that McCleave "take the lead on this." In implementing the plan in Florida, Wagoner emailed several *596 general managers, including one in Florida, informing them that McCleave was going to "champion" the implementation of the energy surcharge. McCleave subsequently sent an email to Wyndham hotels, including those in Florida, stating that a "flat rate" of $2.50 per day per room in all hotels would be easier to administer rather than applying different rates in different regions. After Wagoner agreed to the $2.50 surcharge, McCleave sent an email informing the hotels that, until tent cards were available to be placed at the front desks, signs should be placed in each room informing guests about the surcharge. In an email written by Leh, Leh explained that, while she was confused on the "energy surcharge directive," it had been confirmed that all Summerfield Suites would apply the charge immediately.
The trial court subsequently granted the individual appellees' motion to dismiss, concluding that the complaint made no allegations that Teng performed any act that had an effect in Florida and that there was no allegation that would give rise to liability for Teng. With respect to the other three appellees, the trial court found no bases alleged for supporting jurisdiction over them within the scope of their employment. This appeal followed.
A trial court's ruling on a motion to dismiss based on a question of law, such as a finding of the existence or lack of personal jurisdiction, is subject to de novo review. Execu-Tech Bus. Sys. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000); Ganiko v. Ganiko, 826 So.2d 391, 393 (Fla. 1st DCA 2002). The supreme court has set forth that:
In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.
Execu-Tech, 752 So.2d at 584. (quoting Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989)); Fla. R. Civ. P. 1.110(b). If Florida's long-arm statute does not provide a basis for personal jurisdiction under the first statutory prong of this inquiry, the constitutional analysis is unnecessary. The plaintiff has the initial burden to plead the basis for personal jurisdiction under the long-arm statute. Venetian Salami, 554 So.2d at 502. The plaintiff may fulfill this requirement either by alleging the language of the statute in the complaint without pleading supporting facts or by alleging specific facts indicating that the defendant's actions fit within one of the sections of Florida's long-arm statute, section 48.193. Id. The defendant may then submit an affidavit contesting the allegations concerning jurisdiction, thereby shifting the burden back to the plaintiff to submit affidavits establishing the basis for jurisdiction. Id.
On appeal, the Attorney General argues that the trial court should have exercised long-arm jurisdiction over the individual appellees pursuant to section 48.193(1)(b) Florida Statutes (2001), which provides, in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
...

*597 (b) Committing a tortious act within this state.
The Attorney General also contends that the corporate shield doctrine, which the trial court relied upon in granting the individual appellees' motion to dismiss, is inapplicable to the case at bar.
In Doe v. Thompson, 620 So.2d 1004, 1006 (Fla.1993), the Florida Supreme Court quoted with approval the language used in Estabrook v. Wetmore, 129 N.H. 520, 529 A.2d 956, 959 (1987), which set forth that "[t]he rationale of the [corporate shield] doctrine is `the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer.' " However, the supreme court set forth that "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction...." Doe, 620 So.2d at 1006 n. 1 (emphasis added) (citations omitted). In support of this proposition, the supreme court cited several opinions, one of which was Duke v. Young, 496 So.2d 37 (Ala.1986), wherein the court distinguished between "untargeted negligence" and "intentional tortious acts expressly aimed at the forum state." Doe, 620 So.2d at 1006 n. 1. The Duke court concluded that a defendant could not rely upon the corporate shield doctrine in the latter situation. 496 So.2d at 40 (citing Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).
In Calder, the respondent brought suit in California against the National Enquirer, Inc., a Florida corporation with its principal place of business in Florida, its local distributing company, and the petitioners, the author of the article at issue and his editor, for libel, invasion of privacy, and intentional infliction of emotional harm. 465 U.S. at 785, 104 S.Ct. 1482. In considering the petitioner's motion to quash service of process, the superior court granted the motion and the California Court of Appeal reversed. Id. at 786, 104 S.Ct. 1482. In affirming, the Supreme Court rejected the application of the corporate shield doctrine and stated that the Enquirer's employees:
are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation.... [The employees] are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually.... In this case, [the defendants] are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis.
Id. at 789-90, 104 S.Ct. 1482.
In Allerton v. State, Department of Insurance, 635 So.2d 36, 39 (Fla. 1st DCA 1994), this Court held that the corporate shield doctrine was inapplicable because it had been alleged that the appellant committed the intentional torts of fraud, conspiracy to defraud, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. In holding such, this Court relied upon Doe, Duke, and Calder. Id.
Similarly, in State v. Grodzinsky, 571 N.W.2d 1, 2 (Iowa 1997), the Iowa Supreme *598 Court applied Calder to a situation in which the state of Iowa filed a petition alleging that two non-resident corporate officers had violated the state's consumer fraud statutes by using the mail to perpetrate a series of deceptive practices that induced Iowa consumers to participate in a sweepstakes contest based upon the impression that an entrant was virtually assured to receive money. Id. More specifically, the petition alleged that the two officers were responsible for the "design, layout and writing of the prize promotions [the corporations] had marketed in Iowa." Id. at 6. In concluding that the district court properly denied the defendants' motion to dismiss and affirming, the Iowa Supreme Court held that the officers were subject to personal jurisdiction in Iowa because of their "`primary participat[ion] in an alleged wrongdoing intentionally directed at [Iowa] resident[s].'" Id. at 7 (quoting Calder, 465 U.S. at 790, 104 S.Ct. 1482).
In the instant case, the Attorney General alleged that the individual appellees violated FDUTPA, which provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204(1), Fla. Stat. (2001). It is the intent of the Legislature that, in construing section 501.204(1), "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2001." § 501.204(2), Fla. Stat. (2001). In F.T.C. v. Wilcox, 926 F.Supp. 1091, 1104 (S.D.Fla.1995), the district court, in citing F.T.C. v. Amy Travel Service, Inc., 875 F.2d 564, 573 (7th Cir.1989), held that, once corporate liability is established, individual defendants may also be held liable for consumer redress under the Federal Trade Commission Act if they participated directly in the deceptive practices or acts or they possessed the authority to control them. See, e.g., F.T.C. v. Publ'g Clearing House, Inc., 104 F.3d 1168, 1170 (9th Cir.1997); F.T.C. v. Am. Standard Credit Sys., Inc., 874 F.Supp. 1080, 1087 (C.D.Cal.1994). These decisions are reflective of the purpose behind the Federal Trade Commission Act, which is to protect the public. See Regina Corp. v. F.T.C., 322 F.2d 765, 768 (3d Cir.1963) (citation omitted). As explained in Davis v. Powertel, Inc., 776 So.2d 971, 975 (Fla. 1st DCA 2000), FDUTPA "is designed to protect not only the rights of litigants, but also the rights of the consuming public at large." When addressing a deceptive or unfair trade practice claim, the issue is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances. Id. at 974. A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue. See id. at 973. Therefore, given the allegations raised in the amended complaint, the issue of whether the corporate shield doctrine insulates the individual appellees from suit in Florida must be addressed on an individual basis. See Calder, 465 U.S. at 790, 104 S.Ct. 1482.
As to Wagoner and McCleave, the record infers that both men were the primary instigators of the energy surcharge. Although McCleave averred in his affidavit that he neither personally implemented nor authorized the charging or collecting of any fees at Florida hotels, and Wagoner averred in his affidavit that he did not *599 personally collect any surcharge or receive any money as a result of the surcharges, the Attorney General's counter-affidavits and attached emails establish that the energy surcharge was first initiated by Wagoner, who suggested that the surcharge be implemented in every California hotel. Wagoner subsequently sent an email to McCleave, asking him to devise a plan to "roll out the energy surcharge in several more cities." Wagoner then emailed a general manager of a Florida hotel and others, informing them that McCleave was going to "champion" the surcharge. It was McCleave who, via an email to Wagoner, devised the plan to charge a fee of $2.50 per day per room in all Wyndham hotels, which Wagoner agreed to, because a uniform rate would be easier to administer. In implementing the plan, McCleave sent emails to numerous Wyndham hotels, including those in Florida, explaining how guests should be notified regarding the energy issue, i.e., via signs in the hotel rooms after guests had checked in until tent cards were available for the front desks. In other words, the surcharge was not disclosed to consumers when they reserved their rooms or entered into contracts for certain room rates. In some cases, the surcharge was not disclosed to guests until they checked out and the charge appeared on their final bills. Like the defendants in both Calder and Grodzinsky, Wagoner and McCleave were the primary participants in an alleged deceptive and unfair trade practice intentionally directed at Florida residents. As such, neither individual may avail himself of the corporate shield doctrine and both are subject to jurisdiction in Florida. See Calder, 465 U.S. at 789-90, 104 S.Ct. 1482; Doe, 620 So.2d at 1006 n. 1; Allerton, 635 So.2d at 39; Grodzinsky, 571 N.W.2d at 7. Therefore, we reverse the trial court's order to the extent it granted the motion to dismiss as to these appellees and remand for further proceedings.
With respect to Leh, the record is devoid of any evidence that she was a primary participant in the development or implementation of the energy surcharge in Florida. Leh's unrefuted affidavit establishes that she did not have the authority to develop or implement a policy requiring hotels within her region to impose the surcharge. The record is also devoid of any evidence that Teng was a primary participant in the energy surcharge plan by actively participating in either the development or implementation of the plan. As such, we affirm the trial court's order to the extent it granted the motion to dismiss as to Leh and Teng. Because the issue of whether the amended complaint failed to state a claim against Teng has been rendered moot by our affirmance on the jurisdictional issue, a discussion of this issue is unnecessary.
In determining whether personal jurisdiction over Wagoner and McCleave is proper, we must also consider whether the exercise of Florida's long-arm jurisdiction constitutes a violation of due process. See Allerton, 635 So.2d at 40. The specific inquiry is whether Wagoner and McCleave "should reasonably have anticipated being haled into court" in Florida. See id. (quoting Venetian Salami Co., 554 So.2d at 500). "`[T]he facts of each case must always be weighed' in determining whether personal jurisdiction would comport with `fair play and substantial justice.'" Allerton, 635 So.2d at 40 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "`The quality and nature of an interstate transaction may sometimes be so random, fortuitous, or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction.'" *600 Allerton, 635 So.2d at 40 (quoting Burger King Corp., 471 U.S. at 486, 105 S.Ct. 2174).
Here, both Wagoner and McCleave allegedly engaged in intentional misconduct by developing and implementing a deceptive and unfair trade practice that was expressly aimed at Florida residents and had an adverse impact upon them. Because the effect of their actions was not so random, fortuitous, or attenuated that Wagoner and McCleave could not reasonably anticipate being haled into a Florida court, the exercise of personal jurisdiction over them comports with the requirements of due process. See Calder, 465 U.S. at 790, 104 S.Ct. 1482. Therefore, Wagoner and McCleave are subject to jurisdiction in Florida.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings.
ERVIN and ALLEN, JJ., Concur.
NOTES
[1] The corporations have not challenged the trial court's exercise of jurisdiction over them. This appeal involves only the narrow issues of the trial court's personal jurisdiction over the individual appellees and the dismissal of Teng on the additional ground of failure to state a cause of action.
[2] Leh had left her employment with Wyndham at the time she executed her affidavit.