946 So.2d 1253 (2007)
STATE of Florida, OFFICE OF the ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, Appellant/Cross-Appellee,
v.
COMMERCE COMMERCIAL LEASING, LLC, Court Square Leasing Corp., Dolphin Capital Corp., IFC Credit Corp., National City Commercial Capital Corp., formerly known as, Information Leasing Corp., Liberty Bank Leasing, and Preferred Capital LLC, Appellees/Cross-Appellants.
No. 1D05-2743.
District Court of Appeal of Florida, First District.
January 26, 2007.
*1254 Bill McCollum, Attorney General, Christopher M. Kise, Solicitor General, and *1255 Lynn C. Hearn, and Erik M. Figlio, Deputy Solicitors General, Tallahassee, for Appellant/Cross-Appellee.
James Bruce Culpepper of Akerman Senterfitt, Tallahassee, for Appellees/Cross-Appellants Commerce Commercial Leasing, Dolphin Capital Corporation, National City Commercial Capital Corporation, and Liberty Bank Leasing.
BERNSTEIN, SCOTT M., Associate Judge.
The Attorney General appeals the dismissal with prejudice of its first amended complaint filed pursuant to the Florida Deceptive and Unfair Trade Practices Act (the Act). The core of the complaint revolves around the activities of the entities known as NorVergence, Inc., and its subsidiary, NorVergence Capital LLC, (collectively, NorVergence). NorVergence sold telecommunications services and rented certain equipment to various small businesses in Florida. As part of this effort, NorVergence induced the small businesses to sign equipment rental agreements. NorVergence then sold the rental agreements to appellees, a large group of leasing companies allegedly acting in concert with NorVergence. Thus, the leasing companies now maintain the right to collect rental payments on the equipment from the small businesses. The Attorney General brought the action on behalf of these small businesses in a two-count complaint seeking declaratory relief, injunctive relief, damages, restitution, and attorneys fees and costs against the appellee leasing companies (but not against NorVergence, now a debtor in an involuntary bankruptcy proceeding in the United States Bankruptcy Court for the District of New Jersey).[1] The trial judge dismissed the first amended complaint for failure to state a claim for relief under Florida Rule of Civil Procedure 1.110. We reverse, finding that the first amended complaint does state a cause of action under the Act.

ALLEGATIONS AGAINST NORVERGENCE
The 25-page complaint alleges: NorVergence engaged in a "Ponzi scheme" perpetrated upon small businesses throughout the State of Florida; NorVergence purported to sell a bundled telecommunications services package that included renting an advanced technology device called the Matrix; NorVergence specifically targeted small businesses which did not have in-house counsel or technology personnel capable of evaluating the package; NorVergence falsely claimed the package of services and equipment would "slash" telecommunications costs for the small businesses on landline telephone, cellular telephone and high speed internet services; the rental agreements required rental payments from $5,000 to $70,000 for the Matrix, which NorVergence represented to be a "breakthrough in design;" in fact, the Matrix was decades-old technology with a value between $500-$1,200; NorVergence's only profit-making activity was to procure the rental agreements for the Matrix and then assign the right to receive rental payments under the agreements to the appellee leasing companies in return *1256 for a lump sum payment; NorVergence rarely if ever provided actual telecommunications services to the small businesses, but appellees, as assignees of the rental agreements, nevertheless continue to demand rental payments and insurance on useless equipment.

ALLEGATIONS AGAINST APPELLEES
The Attorney General also contends that the appellee leasing companies and NorVergence were so closely allied that appellees figured in these deceptive and unfair trade practices and that appellees directly engaged in their own unconscionable acts. For example, the complaint alleges the appellee leasing companies pre-approved each lease and each small business before the small business was permitted to enter into any lease with NorVergence and that each lease was then seamlessly, irrevocably and immediately assigned to appellees. The complaint also claims the leases all contain provisions purporting to waive any objections the small businesses might have to making rental payments for the Matrix, even if the equipment did not work. The complaint then claims appellees knew or should have known that: the Matrix was worth between $500-$1,200; there was a gross disparity between rental payments due from the small business and the value of the Matrix; the rental cost varied dramatically from one rental agreement to the next without explanation; and the small businesses were required to acknowledge the Matrix was in working order before it was even connected. The appellee leasing companies allegedly now hold almost 500 rental agreements with payments due at over $12,000,000 for equipment that is essentially worthless to the small businesses in Florida who are receiving no services.
The complaint also alleges NorVergence provided each small business with a stack of documents, claiming the documents to be an "application" to determine if the small business qualified for services, but that the rental agreement was actually buried within the stack; once one of the appellees approved the credit of an individual small business, NorVergence implemented the rental agreement, delivered the equipment and immediately assigned the rental agreement to that appellee in return for the lump sum payment. The master agreement between appellees and NorVergence even required NorVergence to buy back any rental agreement if the small business did not, make the first three lease payments timely.
The allegations in the first amended complaint encompass multiple theories of recovery. The first component of Count I alleges that it is unlawful under section 501.204, Florida Statutes (2004), to enforce unfair and unconscionable agreements. The complaint pointed first to the price (the equipment rental cost) as an unconscionable term. The complaint also singled out four paragraphs in small print on the reverse side of the leases which the Attorney General also believes make these agreements unconscionable: a so-called hell or high water provision, a free-floating venue provision, a warranty disclaimer provision, and an assignee liability provision. The second component of Count I alleges that it is unlawful under section 501.204, Florida Statutes (2004), to enforce agreements (regardless of any specific term in those agreements) procured through deceptive, unfair and unconscionable acts or practices.
Count II of the first amended complaint then alleged that these equipment rental agreements were for the provision of future consumer services. The agreements allegedly violate Rule 2-18.002, Florida Administrative Code, because they did not contain three-day cancellation provisions, *1257 thus constituting a per se violation of section 501.203(3), Florida Statutes (2004).
The trial court's order dismissing the first amended complaint did not address all of the legal theories alleged in the complaint. Instead, the trial court found appellees were exempt from the provisions of the Act, that even if appellees were not exempt, specific contract provisions were permitted by law, and that the agreements were not contracts to provide future consumer services. The trial court, however, never addressed liability under the act for deceptive, unfair or unconscionable acts or practices and never mentioned whether the equipment rental cost term was unconscionable or unfair. We address each issue separately.[2]

THE ACT'S BANK EXEMPTIONS
The trial court initially found that appellees were exempt from the Act. Section 501.212, Florida Statutes, provides:
This part does not apply to:
. . . .
(4) Any person or activity regulated under the laws administered by:
. . . .
(b) Banks and savings and loan associations regulated by the Office of Financial Regulation of the Financial Services Commission;
(c) Banks or savings and loan associations regulated by federal agencies;. . . .
Based on the above statute, the trial court found that each named appellee was exempt, either because it was a subsidiary of a bank (the dismissal order even discloses the names of the various parent banks) or because it engaged in banking activity. The court also found, apparently as a matter of law, that "financing commercial obligations by banks is an activity regulated by federal agencies, including the FDIC." The trial court concluded that the activities alleged here were exempt from the Act because they are regulated by state or federal agencies. None of these "findings" by the trial judge include facts contained anywhere within the four corners of the first amended complaint.
It is axiomatic that a trial court must treat all well pled allegations as true when considering a motion to dismiss. Mosby v. Harrell, 909 So.2d 323 (Fla. 1st DCA 2005). Moreover, the trial court must consider only the allegations within the four corners of a pleading to determine whether the allegations state a proper cause of action. Meadows Cmty. Ass'n, Inc. v. Russell-Tutty, 928 So.2d 1276 (Fla. 2d DCA 2006); Int'l Longshoremen's Ass'n v. Miami-Dade County, 926 So.2d 433 (Fla. 3d DCA 2006); Della Ratta v. Della Ratta, 927 So.2d 1055 (Fla. 4th DCA 2006); Huet v. Mike Shad Ford, Inc., 915 So.2d 723 (Fla. 5th DCA 2005). By venturing outside the factual allegations of the first amended complaint, the trial court here prematurely made findings inappropriate to the motion pending before it. We find the trial court's order dismissing the first amended complaint would be reversible on this basis alone.

BANK SUBSIDIARIES
We also disagree with the trial court's apparent conclusion that all bank subsidiaries and all lease financiers are necessarily exempt from the Act. The language of the statute appears only to exempt banks. The logic appears obvious: if a state or federal agency already regulates banks, there is no need for the Act to *1258 interfere. It is quite a leap, however, to suggest that, just because an entity is a subsidiary of a bank, it is necessarily exempt from the Act. It is an even greater leap to suggest that, just because lease financing (when conducted by banks) is regulated by federal agencies, that all lease financing is therefore regulated, even when conducted by non-banks. There was no evidence in the record, and certainly no allegation within the four corners of the pleading pending before the trial court, that the specific activities here were regulated by any other state or federal agency so as to avoid proscription as a deceptive or unfair trade practice.

THE ACT'S CONSUMER DEFINITION
The trial court also found the equipment rental leases here were not "consumer leases" under section 680.1031(e), Florida Statutes (2004), because the leases were not for "personal, family, or household purposes." The trial court's focus here is clearly misplaced. While section 680.1031, Florida Statutes, does define consumer leases under the Uniform Commercial Code, the FDUTPA statute provides its own definition for the term "consumer;" however, the trial court used the definition section from section 680.1031, Florida Statutes, and applied it to the FDUTPA statute when the statute in question provided the necessary definition. There was no basis in law to do so. See DuFresne v. State, 826 So.2d 272, 275 (Fla.2002) (holding that, in the absence of a statutory definition, a court may resort to related statutory definition). The Act simply is not limited to contracts for "personal, family or household purposes" as defined in the Uniform Commercial Code.

ALLEGATIONS OF DECEPTIVE AND UNFAIR TRADE PRACTICES
The trial court then went on to find that, even if the appellees were not exempt, the activities and contract terms complained of were permitted by Florida law. The trial court's order dismissing the complaint never discusses alleged unconscionable trade practices and never discusses the alleged unconscionability of the equipment rental cost term at all. The order does, however, analyze the four specific contract terms mentioned on the reverse side of the leases. We find the trial court's analysis focused too narrowly on these four lease provisions only and ignored the remaining allegations of the first amended complaint.
The Act provides that "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." § 501.204(1), Fla. Stat. (2004). As we explained in State, Office of Attorney General, Department of Legal Affairs v. Wyndham International, Inc., 869 So.2d 592 (Fla. 1st DCA 2004), the issue when considering a claim under the Act is whether the alleged practice was "likely to deceive a consumer acting reasonably in the same circumstances." Id. at 598. We also noted that:
A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.
Id. at 598. Therefore, in order to assert a proper claim under the Act, the Attorney General had to allege appellees engaged in unconscionable, unfair or deceptive acts or practices likely to deceive a consumer acting reasonably under the circumstances. The first amended complaint asserts that *1259 the various small businesses were victims of a Ponzi scheme, that they were targeted specifically because they were technically unsophisticated, that they were sold grossly overpriced goods, that the agreements failed to disclose they were being simultaneously and immediately assigned, that appellees knew the consumers were not receiving actual telecommunications services, that appellees required consumers to maintain insurance on equipment based on inflated prices, and that appellees accepted delivery letters from consumers, which triggered payment responsibilities, despite having actual knowledge that the equipment had not been delivered in working order. The count specifically alleges these practices are likely to mislead consumers acting reasonably under the circumstances. Count I of the first amended complaint clearly states a cause of action premised on alleged "unconscionable acts or practices" and alleged "unfair or deceptive acts or practices in the conduct of trade or commerce," regardless of the terms in any specific contract provision.

SUBSTANTIVE CLAUSES
The Attorney General also alleges that four specified terms in the lease agreements are facially unconscionable and therefore violate the Act. These specified terms are a "hell or high water" clause under Florida's Uniform Commercial Code, a free-floating venue provision, a waiver of rights upon equipment failure, and an express waiver of defenses against assignees of rental agreements. The trial court determined that all of these terms are permitted by Florida law and therefore fall within a statutory exception to the scope of the Act. Section 501.212(1), Florida Statutes, exempts from liability acts or practices "required or specifically permitted by state or federal law." The purpose of the statute is obvious: it would be unacceptably inconsistent for one statute to penalize conduct mandated elsewhere.
It is not clear whether the trial court was correct to find each of these provisions is permitted by Florida law and thus exempt from the Act.[3] However, we need not reach this issue. Even if each of these provisions were exempt, there are other allegedly unconscionable contract provisions which are sufficient to state a cause of action under the Act. The trial court was simply incorrect to dismiss Count I of the first amended complaint.

FLORIDA ADMINISTRATIVE CODE
The trial court was correct, however, to dismiss Count II of the first amended complaint. Rule 2-18.002, Florida Administrative *1260 Code, Contracts for Future Consumer Services, requires a three-day right of cancellation in bold-faced, 10 point type in all contracts for consumer services to be rendered in the future. Failure to include this provision in applicable contracts is a per se violation of the Act, section 501.203(3), Florida Statutes (2004).
The complaint clearly alleges NorVergence engaged in a scheme which involved future consumer servicesthe offer to provide ongoing telephone and internet services. The complaint also alleged the appellee leasing companies were a critical part of NorVergence's Ponzi scheme. Yet the Attorney General only alleges liability in Count II based on one part of the schemethe leases for the Matrix equipment. These leases do not themselves promise to provide any services, now or in the future. Rule 2-18.002, Florida Administrative Code, only requires a three-day cancellation notice on that portion of the scheme which purports to provide future consumer services. No party argued whether any other documents signed by the small business consumers promised to provide future consumer services, yet failed to contain the three-day notice. The Matrix leases, however, do not promise to provide future consumer services, so there was no requirement they contain a three-day notice. The trial court was correct to find Count II failed to state a cause of action.
We note the trial judge dismissed the first amended complaint "with prejudice;" however, the trial court should not have precluded possible amendment to Count II. Based on the totality of the circumstances already alleged, we cannot now declare it would be "futile" to attempt to assert a cause of action premised on Rule 2-18.002, Florida Administrative Code, Contracts for Future Consumer Services.[4] Thus while we agree Count II as currently worded fails to state a claim for relief, we reverse that portion of the trial court's order dismissing Count II "with prejudice."
The order dismissing the first amended complaint is reversed, and this case is remanded to the trial court for further proceedings.
PADOVANO and POLSTON, JJ., concur.
NOTES
[1] The trial court found, and we agree, that NorVergence is not an "indispensable" party to this litigation. See State, Dep't of Health & Rehabilitative Servs. v. State, 472 So.2d 790 (Fla. 1st DCA 1985); Phillips v. Choate, 456 So.2d 556 (Fla. 4th DCA 1984). A complete determination of a case cannot be had without an indispensable party. The question here is not whether the action may proceed efficiently without NorVergence but whether the action can proceed at all without NorVergence. This matter certainly can proceed without NorVergence to a complete determination of the issues against the appellees. Therefore, NorVergence is not an indispensable party.
[2] Whether a complaint is sufficient to state a cause of action is an issue of law, subject to a de novo standard of review. Warren ex rel. Brassell v. K-Mart Corp., 765 So.2d 235 (Fla. 1st DCA 2000).
[3] See, e.g., Preferred Capital, Inc. v. Sarasota Kennel Club, 2005 WL 1799900 (N.D.Ohio), where one of the very same Matrix leases at issue here was declared unenforceable under Ohio law. Preferred Capital (also a named appellee here), as assignee from NorVergence, sought to collect lease payments for the Matrix from a Florida small business in an Ohio court, with venue in Ohio based on this same free-floating venue clause. The District Court in Ohio dismissed the action, specifically finding the free-floating venue clause was not enforceable in Ohio, as a matter of law, because it was procured through fraud or overreaching and because litigating in Ohio would be unreasonable and unjust. This provision could just as easily be found unenforceable under Florida law. Moreover, section 680.303(5), Florida Statutes, permits leases to be "transferred," thus seeming to permit assignments of leases. However, the statute also states that by accepting the transfer, the transferee/assignee agrees to perform the duties of the transferor/assignor. The challenged contractual provision here, however, appears to relieve the transferee/assignee from performing any of those duties whatsoever. It is not clear whether this statute can be read to "require or specifically permit" this contractual assignment provision, as the trial court found; however, neither of these issues is properly raised at this stage of the litigation.
[4] See Spradley v. Stick, 622 So.2d 610 (Fla. 1st DCA 1993) (finding it was abuse of discretion to refuse amendment of pleadings unless amendment would prejudice opposing party, privilege to amend has been abused, or it would be futile). See also Carr ex. rel. Estate of Grushka v. PersonaCare of Pompano East, Inc., 890 So.2d 288 (Fla. 4th DCA 2004).