# Third District Court of Appeal

## State of Florida

Opinion filed June 12, 2024.
Not final until disposition of timely filed motion for rehearing.

————————

No. 3D22-0230
Lower Tribunal No. 11-36773

————————

**Omer Bechor, et al.,**
Appellants,

vs.

**Simcenter, Inc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Law Offices of Tony B. Jobe, and Tony B. Jobe (Covington, LA); Bruce David Green, P.A., and Bruce D. Green (Fort Lauderdale), for appellants.

The Savage Law Group, P.A., and George S. Savage, for appellee Henry George.

Before LOGUE, C.J., and GORDO and BOKOR, JJ.

BOKOR, J.

Appellants, former students at a flight school, appeal a grant of summary judgment in favor of Appellee (and defendant below), Henry George, on a claim brought under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). The former students contend that the trial court erred by finding that their complaint failed to allege sufficient facts to support a cognizable FDUTPA claim against George in his individual capacity, as opposed to his company, Simcenter, Inc. Because the evidence indicates a genuine issue of material fact, we reverse.

**FACTS**

The former students attended a flight training school called Jet University, Inc. (JetU), which was owned and operated by codefendant Heath Cohen. JetU's promotional materials advertised having an affiliate relationship and job placement services with Pinnacle Airlines, Inc., as well as various permutations of an express "job guarantee" promising free remedial training if students were not hired into a first officer position within six months of completing the program. JetU also represented having "exclusive financing programs" that would allow students to cover tuition and living expenses with financial aid.

Because JetU was not accredited by the Department of Education, its students were not eligible to receive student loans. Consequently, Cohen

2

and George devised an arrangement by which JetU would act as a subcontractor to Simcenter, which was accredited, and have prospective enrollees use Simcenter's credentials and financial aid code to represent that JetU's students were actually enrolled in Simcenter when applying for educational loans. Prospective JetU students were instructed to fill out application agreements for both JetU and Simcenter, and the student loan proceeds were disbursed to Simcenter before being transferred to JetU's operating account, with George allegedly retaining a portion of the proceeds as a "commission."

JetU closed its doors in May 2009, before the former students could complete their flight training. The former students subsequently filed suit, asserting various claims including fraud, breach of contract, and FDUTPA violations against Simcenter and JetU, as well as George and Cohen individually. The former students claimed that the JetU closure was part of an organized scheme between Cohen and George to defraud the students of their tuition payments while failing to provide the promised flight training.

Most of the individual claims against George were ultimately stricken, leaving only Count XVI, which claimed FDUTPA violations for George's alleged deceptive representations about JetU's employment guarantees, placement services, and student loan financing, as well as falsely

3

representing that Simcenter would provide flight training. George moved for summary judgment on that remaining claim, arguing that the former students failed to allege any act that could support individual liability. Further, George argued that the former students failed to causally connect the allegedly deceptive practices to the claimed damages, and in any event, a release provision in the enrollment agreements expressly disclaimed reliance on JetU's employment guarantees and waived Simcenter's liability for JetU's actions. The trial court agreed and granted summary judgment in George's favor, and this appeal followed.

## ANALYSIS

"The standard of review on orders granting final summary judgment is de novo." Ibarra v. Ross Dress for Less, Inc., 350 So. 3d 465, 467 (Fla. 3d DCA 2022) (quoting Orozco v. McCormick 105, LLC, 276 So. 3d 932, 935 (Fla. 3d DCA 2019)). On review of a motion for summary judgment, we take all facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. See, e.g., Cascar, LLC v. City of Coral Gables, 274 So. 3d 1231, 1234 (Fla. 3d DCA 2019).

To be entitled to summary judgment, the movant must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). A dispute of fact is

4

"genuine" when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party, and a factual dispute is "material" when it could have some impact on the outcome of the case under the applicable substantive law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Additionally, because the judgment here was rendered after May 1, 2021, this case is governed by the federal summary judgment standard articulated in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). See In re Amends. to Fla. Rule of Civ. Proc. 1.510, 309 So. 3d 192, 194 (Fla. 2020). Under this standard, "the extent of the moving party's burden varies depending on who bears the burden of persuasion at trial," and where the non-moving party bears the burden of production at trial, the movant need not "support its motion with affidavits or other similar materials *negating* the opponent's claim," but rather must simply demonstrate that "there is an absence of evidence to support the nonmoving party's case." Id. at 193 (quotations omitted). "A party opposing summary judgment must do more than simply show that there is some metaphysical doubt as to the material facts," and "if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." Id. (quotations omitted); see also Chowdhury v. BankUnited, N.A., 366 So. 3d 1130, 1133 n.2 (Fla. 3d DCA 2023) (explaining same).

FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. Accordingly, "a consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). "[U]nlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." State, Office of Att'y Gen., Dep't of Legal Affs. v. Wyndham Int'l, Inc., 869 So. 2d 592, 598 (Fla. 1st DCA 2004). An "unfair practice" has been defined as "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003) (quotations omitted). Additionally, with respect to FDUTPA claims against a corporate officer,

> In order to prove individual liability it is necessary to show that an individual defendant actively participated in or had some measure of control over the corporation's deceptive practices. In addition, to hold a corporate officer liable for monetary restitution, a plaintiff is also required to establish that the defendant had or should have had knowledge or awareness of the misrepresentations. Similarly, it has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings.

6

KC Leisure, Inc. v. Haber, 972 So. 2d 1069, 1073–74 (Fla. 5th DCA 2008) (citations omitted); see also Wyndham, 869 So. 2d at 598.

Here, the facts of the complaint, supported by affidavit, sufficiently allege that Mr. George directed, controlled, and participated in the deceptive representations that formed the basis of the claim, and that these representations caused the former students' damages. The students claim that George, who was the sole officer and shareholder of Simcenter, misrepresented JetU's student loan eligibility and financing programs, exaggerated its placement services, failed to provide the full flight training upon full payment of tuition, and failed to provide a "guaranteed job" or remedial training upon termination of the program, resulting in the former students being enticed to incur extensive costs for unprovided training.

The students claim that George was a direct and intentional participant in making these representations, and the record further indicates that George acknowledged being the only person authorized to execute documents on Simcenter's behalf, knew that JetU was not authorized to receive student loans, and personally negotiated the subcontractor agreement with JetU and Cohen. Cohen also attested that George personally directed the distribution of the student loan payments from Simcenter to JetU and never informed the bank that the funds were going to

JetU students. Given the record evidence, George's claims that he was acting on behalf of Simcenter do not preclude his potential individual liability. See Littman v. Com. Bank & Tr. Co., 425 So. 2d 636, 640 (Fla. 3d DCA 1983) ("Individual officers and agents of a corporation are personally liable when they have committed a tort even if such acts are committed within the scope of their employment or as corporate officers or agents."); KC Leisure, 972 So. 2d at 1074 (finding FDUTPA claim sufficiently alleged that corporate defendant was "direct participant" in deceptive agreement to withhold disclosure requirements from prospective franchisees where "[t]he complaint alleged that the defendants, including Mr. Haber, collectively and unanimously cooked up the scheme" and that "the allegations of the final complaint against Mr. Haber accuse him, among other things, of having actual knowledge of the violations of the Franchise Rule that the corporation was involved in and intentionally electing not only to ignore those requirements, but to draft documents to be given to KC Leisure that were specifically known by him to be violative of the Franchise Rule").[1]

---

[1] We also reject George's argument that the allegations in the complaint were negated by the terms of the agreements the former students signed. While it is true that "[a] FDUTPA claim cannot be stated based upon oral misrepresentations which are in contradiction of written terms of a contract," Dorestin v. Hollywood Imports, Inc., 45 So. 3d 819, 825 (Fla. 4th DCA 2010), the agreements here only purport to release Simcenter itself from liability for JetU's actions, not Simcenter's officers.

"If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it." Moore v. Morris, 475 So. 2d 666, 668 (Fla. 1985). Thus, because George has failed to show that the students lacked sufficient evidence to support Count XVI of their complaint, summary judgment should not have been granted.

Reversed and remanded.