DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JOHN AFFENITA, PRO-THOTICS TECHNOLOGY, INC., ADVANCED BIOCEUTICALS LIMITED, LLC, NASS VALLEY GATEWAY, LTD.,** and **MARGARET AFFENITA,** et al.,
Appellants,

v.

**HOWARD I. STORFER,**
Appellee.

No. 4D2024-1834

[May 21, 2025]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Martin Bidwill, Judge; L.T. Case No. CACE21001155.

Saul Roffe of the Law Offices of Saul Roffe, Esq. P.C., Marlboro, New Jersey, and Ricardo A. Banciella of Ricardo A. Banciella, P.A., Miami, for appellants.

Scott M. Behren of Behren Law Firm, Weston, for appellee.

WARNER, J.

In *Affenita v. Storfer*, 355 So. 3d 440 (Fla. 4th DCA 2023) (*Affenita I*), we affirmed the trial court's order denying Howard Storfer's motion to vacate a default final judgment against John Affenita, Pro-Thotics Technology, Inc., Advanced Bioceuticals, LLC, and Nass Valley Gateway, Ltd., except for their claims of lack of personal jurisdiction. We remanded for the court to conduct a hearing pursuant to *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), to determine whether the court had personal jurisdiction over the defendants. After a hearing, the court determined it had personal jurisdiction over all defendants. We affirm the court's order as to Pro-Thotics and Nass without further comment. We affirm the court's order as to Affenita as well, because of the complaint's tort allegations. However, we reverse the order as to Advanced, because no allegations were made to support jurisdiction over Advanced.

Pro-Thotics is a New York corporation, licensed to do business in Florida between 2014 and 2019, and selling durable medical equipment, particularly orthotics and prosthetics. In April 2013, appellee Storfer entered a Shareholder Agreement with Pro-Thotics. The Shareholder Agreement provided that appellee would own 50 of the Pro-Thotic's 150 shares, and Pro-Thotics would own the rest. Appellee signed the Shareholder Agreement in his personal capacity, while Affenita signed as Pro-Thotics' president. As of March 2018, Pro-Thotics had principal offices in New York, New Jersey, and Florida.

At some point in 2017, Advanced purchased Pro-Thotics. Advanced's owners became Pro-Thotics officers. Advanced is a New Jersey corporation formed to purchase other corporations, particularly those involved in pain relief.

In March 2018, Nass, a Canadian company, executed a reverse merger with Advanced, meaning Advanced and Pro-Thotics transferred all of their shares to Nass in exchange for a majority stake in Nass. Nass operates in the United States through its wholly owned subsidiary, Nass Valley Gardens ("NVG"), which has a principal office in Florida.

In January 2021, appellee, in his individual capacity, filed the original complaint against Pro-Thotics and Affenita. Appellee alleged that, as an owner of 50 Pro-Thotics shares, he should have been compensated when Nass acquired Advanced and Pro-Thotics. In an amended complaint which joined Advanced and Nass, appellee brought five counts. Count I alleged Affenita and Pro-Thotics breached the Shareholder Agreement by failing to compensate appellee after the Nass acquisition. Appellee also alleged that Affenita and Pro-Thotics had promised but had failed to reimburse him for $149,000 of company expenses. Count II alleged Affenita, Pro-Thotics and Advanced were unjustly enriched when Affenita and Pro-Thotics retained the benefit from the Nass acquisition without compensating appellee for his shares in Pro-Thotics, as well as allowing those defendants to retain the $149,000 without reimbursing him, would be unjust.

Count III alleged Affenita, Pro-Thotics and Advanced violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) by selling all Pro-Thotics' shares, including appellee's 50 shares, without paying appellee for his shares. Count IV alleged Affenita, Pro-Thotics and Advanced, breached a fiduciary duty to appellee based on the Shareholder Agreement, which the two corporations allegedly breached by selling Pro-Thotics without compensating appellee. Lastly, Count V alleged Nass tortiously interfered with a business relationship, alleging that Nass knew

2

or should have known about the Shareholder Agreement and interfered with the Shareholder Agreement by buying all Pro-Thotics' shares without compensating appellee.

None of the defendants answered the complaint. Defaults were entered, resulting in a default final judgment. The defendants moved to vacate the default, but the trial court denied the motions. The defendants appealed, and we affirmed the trial court's conclusions, except the court's conclusion that the defendants had waived their lack of personal jurisdiction defense. *Affenita I*, 355 So. 3d at 441. We remanded for the trial court to consider jurisdiction as to each defendant. *Id.* at 441–42. However, because the defendants were otherwise defaulted, all allegations of the complaint except for the jurisdictional allegations had been admitted by the default. *See Kotlyar v. Metro. Cas. Ins. Co.*, 192 So. 3d 562, 565 (Fla. 4th DCA 2016) ("When a default is entered, the defaulting party admits all well-pled factual allegations of the complaint." (quoting *Phadael v. Deutsche Bank Tr. Co. Ams.*, 83 So. 3d 893, 895 (Fla. 4th DCA 2012))).

Pursuant to our mandate, the trial court first considered the jurisdictional affidavits and then set the matter for a *Venetian Salami* hearing. Affenita testified regarding his operation of Pro-Thotics and his Florida contacts. Appellee testified that the Shareholder Agreement was between himself and Pro-Thotics, and he provided evidence regarding the relationships and activities of Pro-Thotics, Advanced, and Nass.

After hearing the evidence, the trial court found jurisdiction over each defendant. As to Affenita, the court found general personal jurisdiction pursuant to section 48.193(2), Florida Statutes (2020), because of Affenita's substantial and ongoing business in Florida "from 2014 until at least 2019 if not the 2020's." The trial court also found that it had specific personal jurisdiction over Affenita under section 48.193(1)(a), for operating a business venture in this state, for committing a tort in this state, and for breaching a contract by failing to perform obligations in this state. *See* § 48.193(1)(a)1., 2., 7., Fla. Stat. (2020). The trial court found personal jurisdiction over Pro-Thotics for operating a business venture in this state. § 48.193(1)(a)1., Fla. Stat. (2020). As to Advanced, the court found that it had locations in Florida; thus, the court apparently found personal jurisdiction over Advanced for operating a business venture in this state. § 48.193(1)(a)1., Fla. Stat. (2020). From this order, the defendants appeal.

## Analysis

In *Venetian Salami,* our supreme court articulated the following test to determine personal jurisdiction over a nonresident under Florida's long-arm statute:

> In determining whether long-arm jurisdiction is appropriate in a given case, two inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.

554 So. 2d at 502 (citation omitted).

Additionally, we have discussed two different types of personal jurisdiction:

> Personal jurisdiction can exist in two forms: "specific," in which the alleged activities or actions of the defendant are directly connected to the forum state, and "general," in which the defendant's connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary.

*Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011).

Section 48.193(2), Florida Statutes, (2020), provides for general jurisdiction: "A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." In order to have specific personal jurisdiction over a nonresident defendant, the cause of action must arise out of one of the acts enumerated in section 48.193(1)(a).

General personal jurisdiction may be established by an individual's business activities both in their personal capacity and on behalf of a corporation. *See May v. Needham,* 820 So. 2d 430, 431 (Fla. 4th DCA 2002) ("[G]eneral jurisdiction over an individual may be based on that individual's activities as an employee on behalf of a corporation."). The substantial contact must continue reasonably close to the complaint's

4

filing date.  *See Singer v. Unibilt Dev. Co.*, 43 So. 3d 784, 789 (Fla. 5th DCA 2010) ("[A] better interpretation focuses on the activities of the nonresident during a reasonable period of time prior to filing the complaint, but not necessarily up until the complaint is filed.").

Several cases provide examples of how close to the commencement of proceedings the activity must exist.  In *Murphy v. Murphy*, 342 So. 3d 799, 804–05 (Fla. 1st DCA 2022), the court found that a husband who had moved out of Florida about seven months before his former wife filed suit against him was not subject to personal jurisdiction in Florida, even though he had previously engaged in "robust contacts" within Florida, as his current contact was not demonstrated as required by statute.  In *Buckingham, Doolittle & Burroughs, LLP v. Kar Kare Automotive Group, Inc.*, 987 So. 2d 818, 822 (Fla. 4th DCA 2008), we found a defendant was not subject to general personal jurisdiction where the defendant had stopped doing business in the state more than eighteen months before the plaintiff filed suit against the defendant.  In *Arch Aluminum & Glass Co. v. Haney*, 964 So. 2d 228, 237 (Fla. 4th DCA 2007), we found general personal jurisdiction was not established where the defendant's Florida contacts ceased at least two years before the plaintiff's suit was filed.  Thus, while substantial contact need not exist up to the commencement of suit to establish general personal jurisdiction, such contact must be present shortly before suit is filed.

### Jurisdiction over Affenita

Regarding the trial court's finding of general jurisdiction over Affenita, the trial court did not affirmatively find that Affenita had continuous contact with Florida through 2020, but found that Affenita had such contact "until at least 2019 if not the 2020's."  Affenita provided evidence that he had been an officer of various Florida companies, but those companies had all become inactive by September 2019.  Appellee did not show Affenita had Florida contacts after September 2019, except for Affenita being a defendant in two lawsuits.  Those lawsuits, however, would not confer general jurisdiction.  *See Trs. of Columbia Univ. in City of N.Y. v. Ocean World, S.A.*, 12 So. 3d 788, 795 (Fla. 4th DCA 2009) ("Columbia's participation in other lawsuits in Florida concerning subject matters separate and distinct from this lawsuit does not create personal jurisdiction over the university in this case.").

As suit was not filed until January 2021, about fifteen months had passed between the time Affenita had ceased conducting business in Florida and the complaint's filing date.  Following *Buckingham* and

*Murphy*, we conclude that too much time had elapsed to subject Affenita to general personal jurisdiction in Florida. The trial court thus erred in finding personal jurisdiction over Affenita under section 48.193(2), Florida Statutes (2020).

The trial court found specific personal jurisdiction over Affenita on three grounds: under sections 48.193(1)(a)1., 48.193(1)(a)2., and 48.193(1)(a)7. As to section 48.193(1)(a)7. jurisdiction, premised upon breach of the Shareholder Agreement, Affenita was not personally a party to that agreement and did not personally owe any contractual duty to appellee. Thus, section 48.193(1)(a)7. does not provide a basis for specific personal jurisdiction over Affenita.

As to section 48.193(1)(a)1., which provides jurisdiction over defendants operating a business in the state, and subsection (1)(a)2., which affords jurisdiction over defendants committing tortious acts in the state, Affenita asserts the corporate shield doctrine exempts him from jurisdiction. "Under the corporate shield doctrine, any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director." *Carter v. Est. of Rambo*, 925 So. 2d 353, 356 (Fla. 5th DCA 2006); *see also Stomar, Inc. v. Lucky Seven Riverboat Co.*, 821 So. 2d 1183, 1187 (Fla. 4th DCA 2002) ("Because the individual defendants were acting in their representative capacity on behalf of the limited liability company in executing the brokerage agreement, the circuit court correctly determined that it could not have personal jurisdiction over them under section 48.193(1)(g)."). As Affenita acted in his corporate position regarding the business operation, his activity in that capacity shields him from personal jurisdiction pursuant to section 48.193(1)(a)1.

However, the corporate shield doctrine has its limitations where a tort is committed in Florida. In *Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012), our supreme court concluded that jurisdiction against a corporate employee could be asserted where torts were committed in Florida:

> Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant. Jurisdiction properly applies to "any person" who commits torts "within this state." § 48.193, Fla. Stat. (2011). To hold otherwise would be tantamount to providing corporate employees with a form of diplomatic

immunity and would abolish the legislative goal inherent in adopting a long-arm jurisdictional statute: to provide an in-state forum to hold those responsible who commit negligent acts in Florida. Florida courts have personal jurisdiction over nonresident defendants whose alleged negligent acts occur in-state irrespective of whether these acts occurred for the benefit of a corporate employer.

*Id.* at 1090.

Furthermore, "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." *Doe v. Thompson*, 620 So. 2d 1004, 1006 n.1 (Fla. 1993). In *State, Office of Attorney General, Department of Legal Affairs v. Wyndham International, Inc.*, 869 So. 2d 592 (Fla. 1st DCA 2004), the court applied *Doe* to a FDUTPA claim: "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Id.* at 598. The court held that corporate officers or employees could be individually liable, and thus subject to personal jurisdiction, for committing a tort in Florida, depending upon their involvement in the deceptive activity directed at Florida. *Id.* at 599.

Here, the complaint, now admitted because of the default, alleged that Affenita and Pro-Thotics owed appellee a fiduciary duty under the Shareholder Agreement because, under that agreement, appellee should have been compensated when Pro-Thotics sold to Advanced. The complaint also alleged a FDUTPA violation, claiming that Affenita and Pro-Thotics engaged in deceptive practices by selling Pro-Thotics without compensating appellee. Because the complaint alleges both a breach of fiduciary duty and a FDUTPA violation, which occurred when the defendant failed to pay appellee who was a Florida resident, long-arm jurisdiction is available pursuant to section 48.193(1)(a)7., Florida Statutes (2020). Thus, as to Affenita, the first criteria of personal jurisdiction has been established.

Once a basis for long-arm jurisdiction has been determined, we must determine whether the defendants have sufficient minimum contacts with Florida to satisfy due process, although neither the defendants/appellants nor appellee address this in their briefs. The due process minimum contacts requirement for personal jurisdiction does not require a presence in Florida, and contacts need not be continuous through the time of filing

the complaint. *See Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 252 (Fla. 2d DCA 2023) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)) ("[T]he law is well settled that 'minimum contacts' do not require *any* physical presence in the state, much less a continuing one."); *see also Murphy*, 342 So. 3d at 805 n.3 ("Prior contacts or activity *would* be relevant to the question whether the former husband's being hauled into a Florida court was foreseeable.").

Affenita served as an officer for several companies that did business in Florida between 2014 and 2019, including Pro-Thotics. Appellee testified that Affenita would visit Florida between two to five times a month for these businesses. Affenita also signed as a guarantor on commercial leases for Pro-Thotics. These actions are sufficient minimum contacts with Florida to satisfy due process. *See Kapila*, 357 So. 3d at 252 (finding minimum contacts where defendant "by its 'own choice' over a period of years, . . . 'deliberately "reached out beyond" its home—by, for example, . . . entering . . . contractual relationship[s] centered' in Florida, for significant pecuniary gain") (alterations in original). Therefore, sufficient minimum contacts exist to find personal jurisdiction over Affenita.

### Jurisdiction over Advanced

As to Advanced, the complaint lists Advanced as a party in the title to the counts for unjust enrichment, violation of FDUTPA, and breach of fiduciary duty. However, no specific allegations are made in any of these counts regarding Advanced, including no allegation that Advanced owed a duty to the plaintiff and that Advanced breached that duty. In the unjust enrichment count, the complaint only alleged that Affenita and Pro-Thotics unjustly received compensation from the Pro-Thotics stock sale. As no mention is made of Advanced in the operative allegations of these pleadings, no basis for either general or specific personal jurisdiction has been alleged. *See Venetian Salami*, 554 So. 2d at 502. Therefore, the trial court erred in finding personal jurisdiction over Advanced.

### Conclusion

As our prior opinion required, the trial court conducted a *Venetian Salami* hearing. The court erred, however, in finding personal jurisdiction over Advanced, because the operative complaint's allegations fail to support a cause of action against Advanced. While the court erred in finding general personal jurisdiction over Affenita, the court correctly found specific personal jurisdiction over him. Therefore, we affirm the trial

court's order as it pertains to finding personal jurisdiction over Affenita, Pro-Thotics, and Nass, but we reverse the order finding personal jurisdiction over Advanced. We remand for the trial court to vacate the default final judgment as to Advanced.

*Affirmed in part and reversed in part.*

CONNER and FORST, JJ., concur.

*      *      *

**Not final until disposition of timely filed motion for rehearing.**